TAYLOR ELECTRICAL SERVICES,
INC., Appellant/Appellee,

v.

ARMSTRONG ELECTRICAL SUPPLY
COMPANY, Appellee/Appellant.

No. 2–04–127–CV.

Court of Appeals of Texas,
Fort Worth.

June 9, 2005.

Eric F. Dankesreiter, Flower Mound, for Taylor Electrical Services, Inc.

Matthews, Stein, Shiels, Pearce, Knott, Eden & Davis, L.L.P., Misti L. Beanland,

Dallas, for Armstrong Electrical Supply Company.

Panel B: LIVINGSTON, DAUPHINOT, and McCOY, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

Both parties appeal from the judgment entered on the jury's verdict primarily in favor of Taylor Electrical Services, Inc. in its breach of contract, fraud, and Deceptive Trade Practices Act (DTPA) claims against Armstrong Electrical Supply Company. Taylor challenges the trial court's entry of an award for Armstrong's attorney's fees.

Armstrong raises sufficiency challenges to the evidence that supports the finding of fraud, the amount of damages the jury awarded, and the knowledge element on the fraudulent mechanic's and materialmen's liens claim. Armstrong also contends that the trial court erred by concluding that Taylor had standing to challenge the mechanic's and materialmen's liens under section 12.003 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.003 (Vernon 2002). We reverse and render judgment for Taylor on Armstrong's attorney's fees claim but affirm the trial court's judgment in all other respects.

### Fact Summary

Taylor is an electrical contractor that was working on replacing interior electrical fixtures in two of the Church of Jesus Christ of Latter Day Saints' churches in Denton County. One church was located at 3000 Old North Road in Denton, Texas (Denton Project), and the other was located at 1100 Stapleton in Flower Mound, Texas (Flower Mound Project).

Armstrong is a subcontractor of electrical supplies that Taylor had used for many years. Taylor, through its president Gary Taylor, had an eighteen-year relationship with its primary contact at Armstrong, David Nichol. Time was of the essence to the church, so Taylor included specific provisions in its suppliers' work orders requiring them to provide supplies by a certain time or liquidated penalties would be incurred. The purchase orders for the Denton Project and the Flower Mound Project each contained a specific on-site delivery date and included a clause that stated, "Delays of receipt will cause delays of completion. Liquidated damages apply to this contract." The on-site delivery date was June 8 for the Flower Mound Project and was June 13 for the Denton Project. Nichol determined both dates after Gary contacted him about the different projects. During these conversations, Gary had specifically told Nichol that timely delivery of supplies was critical. Armstrong failed to timely deliver all of the materials to either project.

When Armstrong failed to timely deliver all of the materials ordered, Taylor began working directly with one of Armstrong's principals, Doris Armstrong, who ultimately disputed the existence of delivery deadlines. Armstrong charged Taylor $46,600 on the Flower Mound Project and $19,650 on the Denton Project. Eventually, Taylor paid the invoices to Armstrong but deducted $6,110 as its liquidated damages due to Armstrong's late deliveries. Initially, Armstrong did not cash one of Taylor's checks for $7,732.99 for the Flower Mound Project or apply a credit to Taylor's outstanding account. Instead, Armstrong filed mechanic's and materialmen's liens against both of the church's properties for the full amounts Armstrong had billed to Taylor. Armstrong did not deposit the $7,732.99 check until after the liens were filed, on November 27, 2001. At the time

of trial, Armstrong claimed that it was still owed $6,169.05.

Taylor told Armstrong that its contract with the church would be suspended if anyone filed liens on the church's property and that Taylor could be subjected to penalties according to its contract with the church. Taylor set forth the existence of the late penalty and the method of calculating it in the Scope of Work document that was supposed to be attached to the bid for each project. Although Gary admits that he did not attach the Scope of Work document to each bid, each bid states that it is subject to penalties for failure to meet delivery deadlines. Gary also testified that he and Nichol went over the delivery deadlines, guarantees, and penalties clause. Under Taylor's contract with the church, Taylor was obligated to defend and indemnify the church against any and all liens filed against church property. Toward that end, Taylor hired legal counsel to demand removal of the liens, but ultimately Taylor was forced to file suit to procure their removal and to sue to recover its other claimed damages for breach of contract, fraud, and deceptive trade practices.

### Issues Presented

In Armstrong's first two points in its appeal, it challenges the sufficiency of the evidence to support the jury's liability and damages award of $13,262 on Taylor's fraud claim. It does not challenge the jury's findings of either liability or damages on Taylor's breach of contract claim. In Armstrong's third point, it challenges the jury's finding that it filed the mechanic's and materialmen's liens with knowledge that it was asserting a fraudulent lien. In its fourth point, Armstrong contends that Taylor lacked standing to bring a fraudulent lien or fraudulent claim cause of action under section 12.003 of the civil

practice and remedies code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 12.003.

Taylor's sole point in its appeal attacks the propriety of the award of Armstrong's attorney's fees of $57,567.50 because Taylor never denied that Armstrong was entitled to the unpaid outstanding balance on the supplies that it provided. Additionally, Taylor points out that the jury's findings were primarily in its favor, thereby creating only an offset to the award in Taylor's favor. Taylor argues that an offset awarded to a defendant does not make it a "successful party" to support the attorney's fees award under section 38.001 of the civil practice and remedies code. *See id.* § 38.001 (Vernon 1997).

### Sufficiency of Evidence—Fraud

■ To prevail in a cause of action for fraud, one must provide sufficient evidence of the elements of fraud, which are (1) a material misrepresentation was made; (2) it was false; (3) when the representation was made, the speaker knew it was false or the statement was recklessly asserted without any knowledge of its truth; (4) the speaker made the false representation with the intent that it be acted on by the other party; (5) the other party acted in reliance on the misrepresentation; and (6) the party suffered injury as a result. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex.1990) (op. on reh'g), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775; *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983); *Kajima Int'l, Inc. v. Formosa Plastics Corp., USA*, 15 S.W.3d 289, 292 (Tex.App.-Corpus Christi 2000, pet. denied).

■ A brief should concisely state all issues or points presented for review. TEX.R.APP. P. 38.1; *Bankhead v. Maddox*, 135 S.W.3d 162, 163 (Tex.App.-Tyler 2004, no pet.). Unless a brief flagrantly violates the briefing rules, we will address those

issues that are fairly included. TEX.R.APP. P. 38.1(e), 38.9; *White v. State,* 50 S.W.3d 31, 45 (Tex.App.-Waco 2001, pet. ref'd). "An issue presented in an appellant's brief is sufficient if it directs the attention of the appellate court to the error about which complaint is made." *Bankhead,* 135 S.W.3d at 163; *Maida v. Fire Ins. Exch.,* 990 S.W.2d 836, 839 (Tex.App.-Fort Worth 1999, no pet.).

Armstrong challenges the sufficiency of the evidence to show that there was ever a promise to make deliveries of the materials by any specific time or to show that Armstrong knew at the time any such representation was made that Armstrong had no intention of delivering the materials by a date certain. Armstrong says that Taylor produced "no evidence" of and failed to introduce "more than a scintilla of evidence" on either of these two elements. Although Armstrong never clearly asserts whether it is making a legal or a factual sufficiency challenge, we interpret the use of this language as attacking the legal sufficiency of the evidence to support the jury's findings. *See Tex. Mexican Ry. Co. v. Bouchet,* 963 S.W.2d 52, 54 (Tex.1998).

■ In determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001); *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee,* 937 S.W.2d at 450; *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l,*

*Inc. v. Nat'l Union Fire Ins. Co.,* 77 S.W.3d 253, 262 (Tex.2002).

■ A "no evidence" point may only be sustained when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998), *cert. denied,* 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999).

■ Armstrong challenges the evidence to support two elements of Taylor's fraud claim: that a false statement was made and that it was made with knowledge of its falsity. In response, Taylor points to the evidence that supports the jury's finding. As to a "material misrepresentation," Taylor points to Nichol's admission that he knew that Taylor would not have been awarded the jobs had Armstrong not guaranteed the delivery dates. Both the Armstrongs testified that it was Armstrong's policy *not* to guarantee delivery dates because their suppliers could not guarantee dates to them. But Gary testified about discussions with Nichol on the importance of the delivery dates. Further, Gary testified that he specifically told Nichol that the church would not award Taylor the contracts if Taylor could not meet and guarantee delivery dates. Gary said that he and Nichol had discussions regarding delivery dates and how to manage them. Gary also explained that he and Nichol agreed that he would type in delivery dates as provided to him by Nichol. In other words, Nichol would actually tell Gary when to expect delivery, and then Gary would type that date on the purchase order. Therefore, even if there was a policy to the contrary, there is more than a

scintilla of evidence that Armstrong committed to and guaranteed delivery dates. This is sufficient to support a finding of a material misrepresentation.

■ Circumstantial evidence of fraud may also be used to support a finding of fraudulent intent, the knowledge element that Armstrong says is not supported by any evidence. *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986). Evidence that Armstrong represented to Taylor that it could deliver certain supplies by a date certain, knowing that such a representation was against company policy, is sufficient to show knowledge of the falsity of the representation. Additionally, it was reasonable for the jury to infer that Nichol's conceding that Gary advised Armstrong the delivery dates were critical ahead of time, and that failure to meet delivery dates could result in the loss of Taylor's contracts with the church and monetary penalties being assessed, supports a knowing and intentional misrepresentation.

Thus, we conclude that there was more than a scintilla of evidence supporting the jury's fraud finding. We overrule Armstrong's first point.

### Sufficiency of the Evidence— Damages for Fraud

According to the Texas Supreme Court opinion of *Formosa Plastics Corp. v. Presidio Engineers and Contractors, Inc.*,

Texas recognizes two measures of direct damages for common-law fraud: the out-of-pocket measure and the benefit-of-the-bargain measure. The out-of-pocket measure computes the difference between the value paid and the value received, while the benefit-of-the-bargain measure computes the difference between the value as represented and the value received.

The out-of-pocket measure allows the injured party "to recover the actual injury suffered measured by 'the difference between the value of that which he has parted with, and the value of that which he has received.' "

960 S.W.2d 41, 49 (Tex.1998) (citations and footnotes omitted). Armstrong contends in its second point that there is insufficient evidence to support the jury's award of $13,262 under either of the recognized measures set forth in *Formosa Plastics*. Again, Armstrong does not plainly state whether it is asserting a legal or factual insufficiency point but refers repeatedly to a claim of "insufficient evidence" in this portion of its brief. We will therefore treat this complaint as a factual sufficiency challenge.

■ Taylor contends that because Armstrong did not attack the jury's damages finding by way of its motion for new trial, it has waived this complaint on appeal. A complaint of factual insufficiency of the evidence to support a jury answer or of the excessiveness of the damages found by the jury must have been raised in a motion for new trial. Tex.R. Civ. P. 324(b)(2), (4); *In re M.S.*, 115 S.W.3d 534, 547 (Tex.2003); *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). Taylor argues that Armstrong's challenges in its motion for new trial are confusing, unclear, and multifarious. However, a review of Armstrong's motion for new trial states that it is challenging the jury's findings of damages for fraud in question number 21 in the amount of $13,262 as being excessive. Therefore, to the extent that Armstrong's point on appeal challenges the excessiveness of the amount of the jury's fraud award that was challenged in its motion for new trial, we will address it. *See C.M. Asfahl Agency v. Tensor, Inc.*,

135 S.W.3d 768, 796 (Tex.App.-Houston [1st Dist.] 2004, no pet.).

■ An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding. *Mar. Overseas Corp.*, 971 S.W.2d at 406–07.

■ There are two primary sources of evidence of damages in the trial below. Gary testified from two exhibits that the trial court admitted; both are summaries of his testimony on damages. Neither the exhibits nor the testimony regarding them is clear. However, we can tell from a review of both that Gary testified to liquidated or penalty damages of $200 per day for forty-two days, for a total of $8,400, and out-of-pocket expenses of $8,089.75, which would total more than $16,000. Also, in response to a question on lost profits, Gary testified to as much as $48,000 in lost profits. While these amounts do not equal the $13,262 in damages the jury found, they are sufficient to support that award. *See C.M. Asfahl Agency*, 135 S.W.3d at 797–98. Because there is evidence supporting a damages award that is actually in excess of the jury's damage award for fraud, the finding is not so weak as to require us to set aside that finding. We overrule Armstrong's second point.

### Fraudulent Lien Statute

In Armstrong's third and fourth points, it challenges the jury's fraudulent lien

findings as to one of the projects and the trial court's award of a $10,000 penalty against it due to that finding.[1] Armstrong says that there is insufficient evidence to show that it knew it was filing a fraudulent lien or that it filed it with intent to cause another person to suffer injury. Importantly, Armstrong also challenges Taylor's standing to assert a claim under the fraudulent lien and fraudulent claim provisions of chapter twelve of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. 12.001–.007 (Vernon 2002 & Supp.2004–05).

■ Subject matter jurisdiction is an issue that may be raised for the first time on appeal; it may not be waived by the parties. *Bland ISD v. Blue*, 34 S.W.3d 547, 553–54 (Tex.2000); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993). The doctrine of standing is "implicit in the concept of subject matter jurisdiction." *Tex. Ass'n of Bus.*, 852 S.W.2d at 443. We review standing, as a component of subject matter jurisdiction, de novo. *City of Arlington v. Scalf*, 117 S.W.3d 345, 347 (Tex.App.-Fort Worth 2003, pet. denied).

Section 12.002 of the Texas Civil Practice and Remedies Code states that

[a] person may not make, present, or use a document or other record with:

(1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

(2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the con-

---

1. Although the jury concluded that only the Flower Mound Project lien was fraudulently filed, the trial court held both liens void in its final judgment. Armstrong has not challenged that part of the judgment.

stitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

    (3) intent to cause another person to suffer:

      (A) physical injury;

      (B) financial injury; or

      (C) mental anguish or emotional distress.

TEX. CIV. PRAC. & REM.CODE ANN. § 12.002(a) (Vernon 2002).

One who violates the fraudulent lien or claim provisions may become liable to an injured person to the greater of $10,000 or the actual damages caused by such violation in addition to incurring liability for court costs, reasonable attorney's fees, and even exemplary damages as determined by the court. *Id.* § 12.002(b). District, county, and municipal attorneys, as well as the "obligor or debtor, or a person who owns an interest in the real or personal property," are allowed to enjoin such actions or to recover damages. *Id.* § 12.003(a)(8). Armstrong says that because the liens are filed against the church's property, the church would be the only party with standing to sue under the fraudulent lien or claim statute. Armstrong says that the liens simply do not create an obligation or debt on Taylor's part that would entitle it to bring this claim. The statute, however, allows property owners as well as "obligors or debtors" to pursue its remedies. *Id.* Unfortunately, neither of those terms is defined.

■■■ When a statute is clear and unambiguous, we "should give the statute its common meaning." *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997). When language in a statute is unambiguous, we will seek the intent of the legislature as found in the plain and common meaning of the words and terms used. *Id.; In re K.L.V.,* 109 S.W.3d 61, 65 (Tex.App.-Fort Worth 2003, pet. denied). We do not need to resort to rules of construction or extrinsic aids to construe a statute that is clear and unambiguous. *St. Luke's Episcopal Hosp.,* 952 S.W.2d at 505; *Cail v. Serv. Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983). When a statute fails to define a term, we apply and use its plain meaning. *See* TEX. GOV'T CODE ANN. § 312.002 (Vernon 2005) (instructing appellate court to use words' ordinary meaning). We should not adopt a construction that would render a law or provision meaningless. *Centurion Planning Corp. v. Seabrook Venture II,* No. 01–02–00518–CV, 2004 WL 2823125, at *3, — S.W.3d —, —— (Tex.App.-Houston [1st Dist.] Dec. 9, 2004, no pet. h.).

■■■ Webster's Dictionary defines the term "obligor" as "one that binds himself or gives his bond to another [or] one that places himself under a legal obligation." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1556 (3d ed.1981). It defines "debtor" as "one indebted to another [or] ... one under obligation to another." *Id.* at 583. The statute clearly lists "obligors" or "debtors" *or* persons owning interests in real or personal property in the disjunctive such that any one of those persons is authorized to bring a cause of action for a fraudulent lien or fraudulent claim. TEX. CIV. PRAC. & REM.CODE ANN. § 12.003(a)(8). The statute does not require the "obligor" or "debtor" to *also* be a person owning an interest in the real or personal property. If we were to read an ownership requirement into the statute, as Armstrong urges, then the language clearly including persons owning real or personal property would be unnecessary and superfluous. We therefore hold that one who is liable as an obligor or debtor on the underlying

debt, whether a property owner of the encumbered property or not, may pursue a cause of action under the fraudulent lien or claim statute. *See Centurion Planning Corp.*, 2004 WL 2823125, at \*4, ⸺ S.W.3d at ⸺. Thus, so long as Taylor showed that it was an obligor or debtor of the debt represented by the lien Armstrong filed, it had standing.

■ The uncontroverted evidence at trial showed that Taylor had contractually agreed to indemnify and hold the church harmless from any and all claims or liens asserted against the church or against its property arising out of Taylor's work. Armstrong's own counterclaim against Taylor asserts that Taylor owes it the balance. The uncontroverted evidence and Taylor's admission that it owed Armstrong some balance on the supplies lead us to conclude that Taylor owed some debt to Armstrong and was contractually obligated to remove, pay to remove, and indemnify the church against any liens or claims filed against the church's property. Because of this contractual obligation imposed on or agreed to by Taylor, we conclude and hold that Taylor was an obligor or debtor entitled to pursue a cause of action against Armstrong under the fraudulent lien or claim statute even though it was not the actual property owner against whose property the liens had been filed. We overrule Armstrong's fourth point.

Because we have determined that Taylor is an appropriate party to bring a fraudulent lien or claim as a cause of action, we turn now to Armstrong's third point that challenges the sufficiency of the evidence to support recovery under the fraudulent lien or claim statute. Again, it is unclear whether Armstrong is asserting a legal or factual insufficiency challenge, but because it repeatedly claims that there is "insufficient evidence," we will apply a factual sufficiency review.

■ Jury question eighteen asked the jury if it found that Armstrong presented a document to the Denton County Clerk with knowledge that such document would create a fraudulent lien or claim against the property with the intent that the document be treated as a valid lien against the property. As to the Flower Mound Project, the jury answered "yes." Armstrong says that there is insufficient evidence to show that it knew it was filing a fraudulent lien or that it did so with intent to cause harm.

The evidence shows that the lien filed against the Flower Mound Project on October 10, 2001 claimed $12,452.04 under oath. One of Armstrong's employees admitted in his deposition testimony that the $12,452.04 amount did not reflect Taylor's $7,732.99 payment dated September 24, 2001 that had already been received. Although this same employee modified his testimony somewhat later at trial to say that he did not know when Armstrong received the check, his deposition testimony is evidence of Armstrong's knowledge that, at the very least, the amount claimed in the mechanic's and materialmen's lien was incorrect. Thus, not only had Armstrong filed a lien against the church property, but it also knowingly claimed an erroneous amount while holding Taylor's check for over half the balance.

As to the "intent to cause injury" prong of a fraudulent lien claim, Taylor points to a letter written by one of the Armstrongs to Taylor that on one hand threatens the filing of the liens yet states, "[w]e do not wish you any harm in your business." Taylor says this is at least some evidence that Armstrong was aware of the potential harm filing a lien on any of the church property could have on Taylor. Further, there was substantial testimony that Taylor made Armstrong aware of not only the importance of timely delivery but also

made Armstrong aware of Taylor's exposure to financial loss due to Armstrong's failure to timely perform. Specifically, Gary testified to prior problems with Armstrong on earlier projects so that he was careful to go over the specifications for these two projects as well as the short time frame. He let Nichol know that the short delivery dates were "critical" to the two church projects and that Taylor would be subjected to a penalty on a sliding scale if deliveries were delayed. Nichol also knew that timely deliveries were essential to Taylor's ability to successfully bid on the projects. We believe this evidence is sufficient to support the intent prong of a fraudulent lien claim.

Based on this evidence, we must conclude that there was factually sufficient evidence to support the jury's finding on the fraudulent lien filing. We overrule Armstrong's third point.

### Attorney's Fees—Successful Party on Appeal

In Taylor's sole issue on appeal, it challenges the jury's award of attorney's fees against it and in favor of Armstrong on Taylor's claim to recover the outstanding balance due it under the Taylor–Armstrong agreements or under a *quantum meruit* theory. In particular, Taylor argues that it was error to award Armstrong its attorney's fees ($57,567.50) under section 38.001 of the civil practice and remedies code because Taylor, not Armstrong, was the successful party in the litigation. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001. On the other hand, Armstrong argues that because it was allowed an off-set against the Taylor recovery for the unpaid balances due from Taylor, it too was a successful or prevailing party under the code.

■ The issue of whether a party is entitled to recover attorney's fees is a question of law for a court to determine. *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex.1999); *VingCard A.S. v. Merrimac Hospitality Sys., Inc.*, 59 S.W.3d 847, 867 (Tex.App.-Fort Worth 2001, pet. denied); *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 23 (Tex. App.-Tyler 2000, pet. denied). Because it involves a purely legal question, we review the availability of the award de novo. *Holland*, 1 S.W.3d at 95.

A party may recover reasonable attorney's fees in addition to the amount of a valid claim and costs if the party's claim is for services rendered, labor performed, or materials furnished, or if the claim is for an oral or written contract. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(1),(2), (3), (8). To recover attorney's fees under section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable and (2) recover damages. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001; *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex.1997); *Alma Group, L.L.C. v. Palmer*, 143 S.W.3d 840, 845–46 (Tex.App.-Corpus Christi 2004, pet. denied). Taylor says that Armstrong did neither.

■ According to our *Hawkins* opinion, we are to look to which party prevailed on the main issue. *Hawkins v. Ehler*, 100 S.W.3d 534, 544 (Tex.App.-Fort Worth 2003, no pet.); *see also State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex.1995). The prevailing party is the party who is vindicated by the judgment rendered. *Brown v. Fullenweider*, 135 S.W.3d 340, 347 (Tex.App.-Texarkana 2004, pet. denied); *Flagship Hotel, Ltd. v. City of Galveston*, 117 S.W.3d 552, 565 (Tex.App.-Texarkana 2003, pet. denied). The determination of who is the prevailing party should focus on who was successful on the merits. *Flagship*, 117 S.W.3d at 565. If multiple parties receive judgment, "the party which received judgment on the

'main issue' is the prevailing party." *Id.* But a party may be entitled to recover attorney's fees even "if the amount recovered on the claim is entirely offset by an amount awarded on an opposing party's claim." *Blizzard v. Nationwide Mut. Fire Ins. Co.,* 756 S.W.2d 801, 806 (Tex.App.-Dallas 1988, no writ); *see also McKinley v. Drozd,* 685 S.W.2d 7, 10 (Tex.1985) (discussing and abolishing the "net recovery" rule in context of article 2226 claims for attorney's fees, the predecessor to section 38.001).

■■■ Taylor contends that Armstrong was not a prevailing party. According to Taylor, we should look to see who is the one who "successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention." Taylor contends that it prevailed on the main issue—whether Armstrong had represented that it would provide materials by specified times and failed. Also, Taylor contends that because it never denied or contested whether Armstrong actually supplied materials or their value, Armstrong really prevailed "on none of its claims." Because Taylor admitted that it had withheld the $6,110 offset amount the jury awarded to Armstrong and Taylor's recovery was in excess of $27,500 (more than four times Armstrong's recovery), Armstrong really recovered nothing. Therefore, it recovered no damages and was thus not entitled to attorney's fees.

We know that the jury found that Taylor was successful in virtually all of its claims against Armstrong. It found that Armstrong had breached its contract to Taylor on both projects, that Armstrong had committed fraud against Taylor regarding delivery dates, that Armstrong had breached a warranty made to Taylor thereby violating the DTPA, and that Armstrong had fraudulently filed a lien against one of the church projects, entitling Taylor to a $10,000 statutory penalty. Moreover, the trial court held both liens void and released both of them. Thus, Taylor was unsuccessful only with regard to the statutory penalty on one of the fraudulent lien claims against it and the jury's failure to find malice against Armstrong in connection with its DTPA claim.

We also know, however, that Taylor withheld a portion of the amounts Armstrong had billed it under their contracts. And Taylor contended it properly withheld funds for the liquidated damages that Armstrong would owe it for Armstrong's failure to timely deliver materials. Taylor contends that it never contested liability for or compensability of the balance, only whether there would ultimately be any money due Armstrong in light of Taylor's claims for breach of contract and liquidated damages. In support, Taylor points to the jury's award of liquidated damages to it on each project.

Armstrong, on the other hand, points to its offset to justify the award of attorney's fees in its favor. Armstrong points to the jury's findings that Armstrong had rendered compensable work on the Denton Project in the amount of $3,465 and compensable work on the Flower Mound Project in the amount of $11,153.70. After applying appropriate payments already made by Taylor, the trial court's judgment reflected an offset in Armstrong's favor in the amount of $6,110—the amount Taylor withheld—yet awarded Armstrong $57,567.50 in attorney's fees. In contrast, the trial court's judgment awarded $4,356.17 to Taylor for Armstrong's breach of contract, $10,000 for Armstrong's filing a fraudulent lien, $13,262 for Armstrong's fraud, $45,000 in attorney's fees, and $2,193.34 in costs.

Because Taylor conceded the issue of the amount that it had not yet paid to Armstrong, it is difficult to see how Armstrong incurred attorney's fees in *pursuing* its claim against Taylor. Armstrong's attorneys testified that the fees incurred were for the benefit of both Armstrong and Pat Stokes, a party no longer involved in the litigation. Plus, that evidence shows that the attorney's fees were incurred in securing the liens—which were found to be fraudulent and void—and in defending against the claims Taylor was pursuing. Moreover, when the litigation is considered in its entirety, we can come to only one conclusion: that Taylor was successful in pursuing the main issue litigated in this case—whether Armstrong knew and represented that it could meet specific delivery dates and failed. Therefore, we conclude and hold that Taylor was the prevailing party entitled to recover attorney's fees under section 38.001 and that Armstrong was not. For this reason, we sustain Taylor's sole point and reverse the trial court's award of $57,567.50 in attorney's fees to Armstrong and render judgment that Armstrong take nothing on those fees.

## Conclusion

Having overruled all of Armstrong's points and sustained Taylor's sole point, we reverse the award of attorney's fees to Armstrong and render judgment that Armstrong take nothing on its claim for attorney's fees. We affirm the trial court's judgment in all other respects.