Opinion issued August 2, 2007








 



 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00762-CV






JESUS IBARRA, Appellant


V.


PEGGY NICHOLES, LESA NICHOLES, AND 

SALON N.V. AND DAY SPA, INC., Appellees






On Appeal from the 113th District Court

Harris County, Texas

Trial Court Cause No. 2004-15621






MEMORANDUM OPINION



 This is a suit between a commercial tenant of a retail center and a subcontractor
hired to make improvements to the leased space. Appellees, Peggy Nicholes, Lesa
Nicholes, and Salon N.V. and Day Spa, Inc. (collectively, the "Salon"), sued Jesus
Ibarra for negligence, alleging defective construction of cabinetry. Ibarra
counterclaimed under theories of breach of contract and, alternatively, quantum
meruit, seeking payment for materials and services rendered to the Salon. In addition,
Ibarra filed mechanic's and materialman's liens against the entire retail center
property encompassing the Salon. The Salon filed a motion for summary judgment (1) 
on Ibarra's counterclaims and to set aside Ibarra's liens, which the trial court granted. 

 In what we construe as five issues, Ibarra contends that the trial court erred by
granting summary judgment in favor of the Salon because (1) the Salon lacked
standing to challenge Ibarra's liens; (2) the Salon's motion to vacate Ibarra's liens
was not properly verified; (3) the trial court lacked authority to summarily dispose of
the liens on the basis presented; (4) Ibarra's response was improperly deemed
untimely; and (5) genuine issues of material fact precluded summary judgment.

 We affirm.

Summary of Facts and Procedural History

 In May 2003, the Salon leased space in the Royal Oaks Plaza commercial
center on Westheimer Road in Houston (the "Leased Premises"). The Salon hired a
general contractor, John Jamar, to construct improvements to the Leased Premises. 
Pursuant to an oral agreement, the Salon promised to pay $385,000 to Jamar, and, in
exchange, Jamar promised to purchase all materials; hire, supervise, and pay all
subcontractors; and provide an accounting for all sums expended. The parties agreed
that Jamar would complete the improvements by September 1, 2003. 

 Construction began immediately, and Jamar hired Ibarra to construct and install
custom cabinets at the Leased Premises. From May to October of 2003, according
to the Salon, there were ongoing issues with Jamar and Ibarra regarding delays and
defects in the construction. 

 On October 14, 2003, Ibarra invoiced Jamar for $31,721 for the cabinetry. 
Although the Salon had paid Jamar sufficient funds to pay Ibarra, Jamar failed to pay
Ibarra. Subsequently, Ibarra met with the Salon and asserted that he was still owed
"around $30,000." By late October, after the Salon had advanced Jamar $383,000 of
the $385,000 agreed price, Jamar abandoned the job, leaving it unfinished. 

 On October 30, 2003, and again on February 13, 2004, Ibarra filed mechanic's
and materialman's liens in the real property records of Harris County in which he
claimed a lien of $54,400 against the entire fee simple interest in the Royal Oaks
Plaza property owned by the landlord, Royal Oaks Plaza, Ltd. (the "Landlord").

 On April 19, 2004, the Salon sued Jamar and Ibarra. (2) As to Jamar, the Salon
claimed breach of contract, fraud, negligence, and conversion. The Salon alleged that
Jamar had, inter alia, failed to complete "several fundamental aspects of the
construction, including cabinet installation." In addition, the Salon alleged that Jamar
had failed to pay over $50,000 owed for supplies and work performed by
subcontractors and that, consequently, the suppliers and subcontractors had filed liens
against the Leased Premises. 

 As to Ibarra, the Salon claimed negligence, alleging that Ibarra had incorrectly
stained the cabinets, installed glass shelving in a manner that caused the glass to fall
and shatter, failed to install work in compliance with codes, and failed to deliver
materials for which he had been paid. In addition, the Salon sought to have Ibarra's
liens vacated on the basis that the lien affidavit was overbroad and improperly placed
a cloud on the title of the entire property rather than being restricted to the Salon's
leasehold interest.

 Ibarra counterclaimed against the Salon, seeking payment for the cabinetry
under theories of breach of contract and, alternatively, quantum meruit, and seeking
enforcement of his liens. Ibarra cross-claimed against Jamar for breach of contract,
quantum meruit, and fraud.

 In June 2004, the Salon moved for a partial summary judgment seeking to
dismiss Ibarra's counterclaims and to vacate Ibarra's liens. Specifically, as to Ibarra's
breach of contract claim, the Salon contended that no contract existed between the
Salon and Ibarra. As to Ibarra's alternative quantum meruit claim, the Salon
contended that it was Jamar's sole obligation to pay Ibarra. The Salon further
asserted that Ibarra had failed to perfect his liens. To support its motion, the Salon
attached the affidavit of Peggy Nicholes, the Salon's lease with Royal Oaks, Ibarra's
invoice to Jamar, and Ibarra's original and revised lien affidavits. 

 On July 6, 2004, Ibarra responded to the Salon's motion for summary
judgment, contending that the Salon's motion was procedurally defective and that
genuine issues of material fact precluded summary judgment. Ibarra contended that
he received direct assurances from Peggy and Lesa Nicholes that they would pay him,
notwithstanding that they had already paid Jamar, and Ibarra asserted that his lien was
proper. As evidentiary support, Ibarra attached his affidavit, a copy of the lease, and
an accounting from Jamar.

 On July 19, 2004, after a hearing and without stating its basis, the trial court
granted summary judgment in favor of the Salon, dismissing Ibarra's counterclaims
with prejudice and vacating Ibarra's liens on Royal Oaks Plaza. 

 On February 17, 2005, the trial court granted the Salon's motion to sever its
claims against Jamar into a separate suit. (3) On March 11, 2005, Ibarra moved for
reconsideration of the summary judgment and severance order and, in the alternative,
for a new trial. Specifically, Ibarra speculated that the trial court must have
improperly disregarded Ibarra's summary judgment response as untimely. In
addition, Ibarra contended that the severance order improperly failed to address
Ibarra's cross-claims against Jamar. 

 On March 24, 2006, the Salon non-suited its claims against Ibarra. The claims
by the Salon and Ibarra against Jamar were re-consolidated. Trial in these matters
was held April 18, 2006, at which Jamar failed to appear. The trial court rendered a
default judgment against Jamar in favor of the Salon for $216,817 plus attorney's fees
of $44,000. As to Ibarra's cross-claims against Jamar, the trial court rendered a
default judgment against Jamar for $64,000 plus attorney's fees of $11,000. The trial
court's order also recites that it had previously granted summary judgment in favor
of the Salon on Ibarra's counterclaims and that Ibarra's motion for reconsideration
was denied. In addition, the trial court's order states that all remaining claims had
been resolved and that the order constituted a final judgment. Summary Judgment

A. Standard of Review

 We review a trial court's grant of a traditional summary judgment de novo. 
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). A
summary judgment under Rule of Civil Procedure 166a(c) is properly granted only
when a movant establishes that there are no genuine issues of material fact and that
he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); KPMG Peat
Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999). 
A plaintiff moving for summary judgment must prove that he is entitled to summary
judgment as a matter of law on each element of his cause of action. MMP, Ltd. v.
Jones, 710 S.W.2d 59, 60 (Tex. 1986); Rizkallah v. Conner, 952 S.W.2d 580, 582
(Tex. App.--Houston [1st Dist.] 1997, no writ). A defendant moving for summary
judgment must either (1) disprove at least one element of the plaintiff's cause of
action or (2) plead and conclusively establish each essential element of an affirmative
defense to rebut plaintiff's cause. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995). 
In deciding whether there is a disputed material fact precluding summary judgment,
evidence favorable to the non-movant will be taken as true, every reasonable
inference must be indulged in favor of the non-movant, and any doubts will be
resolved in its favor. Knott, 128 S.W.3d at 215. The movant must conclusively
establish its right to judgment as a matter of law. See MMP, Ltd., 710 SW.2d at 60. 
A matter is conclusively established if reasonable people could not differ as to the
conclusion to be drawn from the evidence. City of Keller v. Wilson, 168 S.W.3d 802,
816 (Tex. 2005).

 When, as here, the trial court's summary judgment order does not state the
basis for the trial court's decision, we must uphold the order if any of the theories
advanced is meritorious. Knott, 128 S.W.3d at 216.

B. Standing

 In what we construe as his first issue, Ibarra contends that the trial court erred
by granting summary judgment in favor of the Salon because the Salon lacked
standing to challenge Ibarra's liens. Ibarra filed the liens at issue on the Landlord's
entire fee estate (Royal Oaks Plaza) to secure the debt allegedly owed on
improvements that Ibarra made to the Salon's leasehold space in Royal Oaks Plaza. 
Ibarra contends that the Salon, as a lessee, lacked standing to file an application under
Texas Property Code section 53.160 for a summary disposition of the liens on the fee
estate of the Landlord. See Tex. Prop. Code Ann. § 53.160 (Vernon 2007). The
Salon contends that it is a proper party to invoke the remedy provided by section
53.160 by its status as a party to this suit and that it has standing to bring this suit
because it is personally aggrieved by Ibarra's liens. See id.

 Texas Property Code section 53.160, "Summary Motion to Remove Invalid or
Unenforceable Lien," provides that, in a suit brought to declare a lien invalid, a party
objecting to the validity of the lien may file a verified motion to remove the lien, as
follows:

 (a) In a suit brought to foreclose a lien or to declare a claim or lien
invalid or unenforceable, a party objecting to the validity or
enforceability of the claim or lien may file a motion to remove the claim
or lien. The motion must be verified and state the legal and factual basis
for objecting to the validity or enforceability of the claim or lien. The
motion may be accompanied by supporting affidavits.


Id. Here, the Salon brought this suit, in part, to declare Ibarra's mechanic's and
materialman's liens invalid and to remove them, as it was authorized to do by section
53.160(a). Ibarra's challenge to the Salon's standing to bring the suit is a separate
question. (4) 

 "A plaintiff has standing when it is personally aggrieved, regardless of whether
it is acting with legal authority." Nootsie, Ltd. v. Williamson County Appraisal Dist.,
925 S.W.2d 659, 661 (Tex. 1996). We consider whether the plaintiff has a sufficient
relationship with the lawsuit so as to have a "justiciable interest" in its outcome. 
Austin Nursing Ctr., Inc. v. Lovato, 171 S.W.3d 845, 848 (Tex. 2005). The general
test for standing requires (1) the existence of a real controversy between the parties,
which (2) will be actually determined by the judicial declaration sought. Brown v.
Todd, 53 S.W.3d 297, 305 (Tex. 2001); Tex. Ass'n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993). Unless standing is conferred by statute, a plaintiff
must demonstrate that he "possesses an interest in a conflict distinct from that of the
general public, such that the defendant's actions have caused the plaintiff some
particular injury." Williams v. Lara, 52 S.W.3d 171, 178-79 (Tex. 2000). We
construe the petition in favor of the plaintiff and review the entire record to determine
whether any evidence supports standing. See Tex. Ass'n of Bus., 852 S.W.2d at 446.

 Here, the Salon must demonstrate that it possesses an interest in the lien
conflict that is distinct, such that Ibarra's actions in asserting liens on the Landlord's
fee estate have caused the Salon some particular injury. See Williams, 52 S.W.3d at
178-79. The Salon contends that the property description in Ibarra's lien affidavit
was overbroad in that it encompassed all of the Landlord's property. The Salon
contends that, by erroneously attaching liens to the Landlord's interest, Ibarra
"affected [the Salon's] contractual relationship with [the Landlord]." In other words,
the Salon contends that it has an interest that is affected by the existence of the
allegedly invalid liens. We review the entire record to determine whether any
evidence supports the Salon's standing. See Tex. Ass'n of Bus., 852 S.W.2d at 446.

 Our review of the record indicates that, pursuant to the Salon's lease contract
with the Landlord, the Salon "acts as a principal and not as the agent of the Landlord"
with regard to the making of improvements to the premises and that the Salon "agrees
to indemnify and hold [the] Landlord harmless from all claims (including costs and
expenses of defending against such claims) arising or alleged to arise from any act or
omission of . . . [the Salon's] . . . contractors, subcontractors, laborers, [and]
materialmen . . . ." In addition, pursuant to the lease, the Salon "shall have no
authority to place any lien upon the leased premises or any interest therein" and any
act which allows a lien to be created against the premises is considered an "Event of
Default" that may result in termination of the lease, eviction of the Salon, and liability
of the Salon to the Landlord for damages and expenses.


 We conclude that because the Salon is contractually bound under the lease to
defend the Landlord against a suit by the Salon's subcontractors and the presence of
Ibarra's liens on the fee estate as a result of improvements made to the Salon's
leasehold constitutes a default by the Salon under its lease, the Salon has
demonstrated that it is "personally aggrieved" by Ibarra's liens and that the Salon has
a sufficient relationship with the lawsuit to have a "justiciable interest" in its
outcome. See Lovato, 171 S.W.3d at 848; see also Taylor Elec. Servs., Inc. v.
Armstrong Elec. Supply Co., 167 S.W.3d 522, 532 (Tex. App.--Fort Worth 2005, no
pet.) (concluding, in context of standing to file suit under fraudulent lien statute, that
contractor had standing to challenge subcontractor's lien against fee estate because
contractor had contractually agreed to indemnify fee estate owner in the event of a
lien against the fee estate arising from construction).

 Accordingly, we overrule Ibarra's first issue. 

C. Verification

 In what we construe as his second issue, Ibarra contends that the trial court
erred by granting summary judgment in favor of the Salon because the Salon's motion
to vacate Ibarra's liens was not properly verified. Specifically, Ibarra contends that,
although the Salon's motion was accompanied by the sworn affidavit of its president,
Peggy Nicholes, the motion was not verified as required by section 53.160. See Tex.
Prop. Code Ann. § 53.160(a). The plain language of section 53.160 requires a
motion in a suit to remove an invalid lien to "be verified" and permits the motion to
"be accompanied by supporting affidavits." See Tex. Prop. Code Ann. § 53.160. 

 Here, the Salon provided the sworn affidavit of its president, Peggy Nicholes. 
In her affidavit, Nicholes attests to the Salon's legal and factual bases for objecting
to the validity of Ibarra's liens. Texas Rule of Civil Procedure 193 requires certain
pleas to be "verified by affidavit," including those matters "required by statute to be
pleaded under oath." See Tex. R. Civ. P. 93. Ibarra has not cited any authority for his
contention that a motion under this chapter cannot be verified by sworn affidavit.

 We conclude that the Salon presented a verified motion, as required, by section
53.160. Accordingly, Ibarra's second issue is overruled.

D. Removal of the Liens

 In what we construe as his third issue, Ibarra contends that "[t]he trial court has
no authority to summarily order the removal of the lien claiming affidavit from the
real property records as to the Landlord on the grounds asserted." Ibarra contends
that section 53.160 does not "permit joinder of a legal question as complex as the
question, necessarily fact-intensive, of a Landlord's involvement in a build-out
project." 

 Section 53.160 expressly provides authority for a trial court to hear a motion
to remove a lien under this section and, if the trial court determines that the movant
is entitled to remove the lien, for the court to "enter an order removing the lien
claimed in the lien affidavit." See Tex. Prop. Code Ann. § 53.160(e). Section
53.160 permits as grounds for objecting to the validity of a lien that the affidavit
claiming a lien failed to comply with section 53.054. Id. § 53.160(b)(2). Section
53.054 provides that an affidavit claiming a lien "must contain substantially . . . a
description, legally sufficient for identification, of the property sought to be charged
with the lien." Id. § 53.054. 

 Here, the Salon objected to the validity of Ibarra's liens on the grounds that
Ibarra's affidavits contained an overly broad property description. The Salon
contends that Ibarra's assertion of liens over the entire fee estate of Royal Oaks Plaza
was improper because the Landlord did not contract for the improvements to the
leased space. The Salon contends that, at most, Ibarra could have been entitled only
to a lien against the Salon's leased premises. 

 Ibarra contends that, because the Salon's lease provided that the Landlord must
approve the Salon's build-out plans and that the Landlord would reimburse certain
improvements from a "build-out fund," the Landlord "retained control" over the
improvements such that the Landlord is presumed to have been the true contracting 

party and is made subject to the liens seeking to enforce the obligation to pay for the
work done, citing, as authority for this proposition, Bond v. Kagan-Edelman Enters.,
985 S.W.2d 253, 261 (Tex. App.--Houston [1st Dist.] 1999), rev'd in part on other
grounds, 20 S.W.3d 706. We disagree.

 "Our courts have long held that a mechanic's and materialman's lien attaches
to the interest of the person contracting for construction." Commercial Structures &
Interiors, Inc. v. Liberty Educ. Ministries, Inc., 192 S.W.3d 827, 835 (Tex.
App.--Fort Worth 2006, no pet.) (quoting Diversified Mortgage Investors v. Lloyd
D. Blaylock Gen. Contractor, Inc., 576 S.W.2d 794, 805 (Tex. 1978)). When a lessee
contracts for construction, any resulting mechanic's lien attaches only to the leasehold
interest and not to the fee interest of the lessor. Id.; Bond, 985 S.W.2d at 261; 2811
Assocs. Ltd v. Metroplex Lighting & Elec., 765 S.W.2d 851, 853 (Tex. App.--Dallas
1989, writ denied); see also Schneider v. Delwood Ctr., Inc., 394 S.W.2d 671, 673
(Tex. Civ. App.--Austin 1965, writ ref'd n.r.e.) (explaining that rights of contractor
or materialman can rise no higher than those of person with whom he contracted). 
Unless the owner of the land is also a party to the construction contract or the lessee
is acting as the authorized agent of the lessor, no mechanic's lien attaches to the fee
estate. Inman v. Orndorff, 596 S.W.2d 236, 238 (Tex. Civ. App.--Houston [1st Dist.]
1980, no writ); Rosen v. Peck, 445 S.W.2d 241, 243 (Tex. Civ. App.--Waco 1969,
no writ).

 Our examination of the lease shows that the Salon was required to present its
design plans to the Landlord for written approval and to ensure that all work was
performed in a workmanlike manner and in accordance with applicable codes. In
addition, the lease provides that all improvements became the property of the
Landlord and that the Salon had no "right, title, or interest (including lien interest)"
in those improvements "except as a Tenant under the provisions of [the] lease." 
However, the lease also requires the Salon to "promptly pay any and all contractors
and materialmen, so as to avoid the possibility of a lien being filed for record on the
Leased Premises," and to indemnify and hold the Landlord harmless from all claims. 
Further, the lease expressly states that the Salon "shall have no authority to place any
lien upon the Leased Premises or any interest therein nor in any way to bind" the
Landlord and that the Landlord "expressly disclaims liability for the cost of labor
performed and materials furnished." The lease further provides for a construction
allowance to be paid directly to the Salon, but only after all of the Salon's
construction is completed, a certificate of occupancy permit is obtained, and a final
lien release is obtained from the Salon's general contractor. We cannot conclude, as
Ibarra urges, that this language constitutes evidence that the Landlord was the true
contracting party in procuring the improvements to the Leased Premises. 

 In addition, Bond does not support Ibarra's contentions. In Bond, Irwin leased
space for a restaurant in a shopping center owned by Kagan. Bond, 985 S.W.2d at
255. Prior to the commencement of the lease, Kagan hired Irwin to act as its general
contractor to build out the restaurant. Id. Completion of the premises was a condition
precedent to the commencement of Irwin's lease of the premises. Id. Irwin, in turn,
hired Bond to complete the interior construction. Id. Kagan met with Bond, provided
specifications, inspected Bond's work each week, and contributed $27,732 to Irwin
toward the cost of construction. Id. When Irwin failed to pay Bond, Bond sent
demands for payment to Irwin and to Kagan, and filed a lien against Kagan's fee
interest in the real property. Id. at 256. The trial court concluded that Bond did not
have a claim against Kagan under the Property Code. Id. On appeal, we recognized
that "when a lessee contracts for construction, the mechanic's lien attaches only to the
leasehold interest, not to the fee interest of the lessor." Id. at 261. However, there,
we concluded that under the circumstances of that case Bond had a valid lien against
Kagan's fee estate because completion of the construction was a condition precedent
to commencement of the lease and, at the time of construction, Irwin was Kagan's
general contractor, not his tenant. Id. Hence, Bond is inapplicable to this case. 

 Accordingly, Ibarra's third issue is overruled.


E. Timeliness of Ibarra's Response

 In what we construe as his fourth issue, Ibarra contends that his response to the
Salon's motion for summary judgment was improperly deemed untimely. 
Specifically, Ibarra contends that "[a]t hearing [sic], the Court observed the absence
from the clerk's file [of] any response by Ibarra." Ibarra contends that his response
was timely filed but that it was not included in the trial court's paper file at the time
of the hearing because of a clerical delay at the trial court. Ibarra contends that "[t]he
only good explanation for the trial court's granting of the summary judgment against
Ibarra and in favor of [the Salon] is that the Court disregarded [Ibarra's] response,
perhaps believing it was late filed." 

 The Salon does not dispute the timeliness of Ibarra's response and contends
that Ibarra's response was in fact before the trial court. The Salon contends that, at
a hearing conducted July 12, 2004, the trial court heard from both parties on the
timeliness of Ibarra's response and that, without comment, the trial court proceeded
to allow both parties to present their arguments. 

 We note that Ibarra's response appears in the clerk's record and that there is
nothing in the record to indicate that Ibarra's response was stricken. The record on
appeal does not contain a transcript of the hearing. We cannot conclude on the record
before us that the trial court erred by failing to consider Ibarra's response. There is
nothing in the record to suggest that the trial court struck the response as untimely or
that it failed to consider the response. Thus, there is nothing presented for review. 
See Tex. R. App. P. 38.1(h), (j). 

 Accordingly, Ibarra's fourth issue is overruled.

F. Fact Issues

 The Salon sought summary judgment on Ibarra's counterclaim for breach of
contract and alternative claim in quantum meruit. In what we construe as his fifth
issue, Ibarra contends that his response raised genuine issues of material fact that
precluded summary judgment on his contract and quantum meruit claims. Ibarra
abandoned his quantum meruit claim on appeal. Thus, we address only his contract
claim. 

 As the counter-defendant moving for summary judgment, the Salon had the
burden either (1) to disprove at least one element of Ibarra's cause of action or (2) to
plead and to conclusively establish each essential element of an affirmative defense
to rebut Ibarra's cause. See Cathey, 900 S.W.2d at 341. Ibarra, as the nonmovant,
had no burden to respond to the Salon's summary judgment motion unless the Salon
conclusively established its defense. M.D. Anderson Hosp. & Tumor Institute v.
Willrich, 28 S.W.3d 22, 23 (Tex. 2000). 

 Generally, a subcontractor cannot recover on a contract theory against a
property owner unless the subcontractor establishes that he was in privity of contract
with the property owner. City of Corpus Christi v. Acme Mech. Contractors, Inc.,
736 S.W.2d 894, 898 (Tex. App.--Corpus Christi 1987, writ denied). Here, unless
there is an express contract making the Salon liable to Ibarra, the Salon is liable solely
to Jamar, and Jamar is liable to Ibarra. See id. 

 The elements of Ibarra's breach of contract claim are: (1) the existence of a
valid contract; (2) performance or tendered performance by the plaintiff; (3) breach
of the contract by the defendant; and (4) damages sustained as a result of the breach. 
Prime Prods, Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 636 (Tex. App.--Houston
[1st Dist.] 2002, pet. denied). 

 The Salon contended in its motion for summary judgment that no valid contract
existed between the Salon and Ibarra. A valid contract is formed when the following
elements are present: (1) an offer, (2) acceptance in strict compliance with the terms
of the offer, (3) a meeting of the minds, and (4) execution and delivery of the contract
with the intent that it be mutual and binding. Id. In determining the existence of a
valid oral contract, we look to the communications between the parties and to the acts
and circumstances surrounding those communications. Id.

 To support its contention, the Salon appended the affidavit of its president,
Peggy Nicholes, a copy of the lease, and a copy of an invoice from Ibarra to Jamar. 
In her affidavit, Nicholes attested that she entered an oral agreement with Jamar to
construct improvements to the Leased Premises and that Jamar, as the general
contractor on the project, agreed to supervise and pay all subcontractors. Jamar hired
Ibarra as a subcontractor. Nicholes attested that the Salon made progress payments
to Jamar and that Jamar had sole responsibility of paying the subcontractors from
those sums. 

 In his response, Ibarra contended that there was a genuine issue of material fact
regarding the existence of a contract in that the Salon expressly promised Ibarra that
he would be paid. As evidentiary support, Ibarra appended his affidavit, the lease,
and an accounting from Jamar to the Salon, dated October 21, 2003. 

 In his affidavit, Ibarra attested that Jamar hired him to provide custom
cabinetry at the Salon. Ibarra attested that he agreed to accept the job at $54,000, an
amount substantially below his bid of $80,000, because Jamar promised to hire Ibarra
on an upcoming larger project and because Jamar promised to provide assistance with
labor and some of the materials. Ibarra attested that, during the construction period,
he did not talk with the Nicholeses, but rather, he spoke with their designer. Ibarra
attested that, at the end of the construction period, as Ibarra was delivering the final
pieces, he inquired with the Salon about getting paid, as follows in pertinent part:

 Jamar did not pay me the way and at the times he promised. I was not
being paid what I was owed and promised. I got worried that I was not
getting paid. I had installed everything already except the hair stations. 
I was owed most of my bid price, plus a large number of extras. It was
time to bring the hair stations to the project from my shop. I wanted to
know about getting paid before I installed them. . . . I delivered the hair
stations and I asked Lisa [sic] and Peggy if I was going to get paid for
my work. Jamar had said to me that Peggy and Lisa [sic] had said they
were going to pay all the people who were still owed money. So I asked
them. They said yes we will pay you directly ourselves but we are
double paying but we just need an invoice from you for the amount we
will pay you. They said we are going to pay everybody. They said they
had already paid Jamar. They said Jamar owed all the workers and
subcontractors on the job. I had to go back and do the invoice at the
shop. . . . The architect during this phase promised me that I was going
to be paid too. . . . So I made them an invoice for a bare minimum
amount if they would pay me then. This is the invoice that is marked as
Exhibit B to Exhibit 1 in the motion for summary judgment. 


 As Ibarra's affidavit indicates, and the parties do not dispute, Ibarra negotiated
and entered into a contract with Jamar to provide cabinetry to the Salon project. It
is undisputed that Jamar supervised Ibarra's work, save limited input from the
designer. Jamar's accounting statement that Ibarra appended to his response, dated
October 21, 2003, is labeled "Final" and indicates that Jamar made the payments to
Ibarra and that Jamar handled upgrades and extras for the cabinetry. Ibarra attested
in his affidavit that he became concerned when he delivered the final pieces because
Jamar had not paid him as promised. Ibarra attested that the cabinetry was finished 

when he spoke with the Nicholeses. Ibarra seems to suggest, without providing any
authority for his contention, that a wholly new contract, separate from his contract
with Jamar, was created with the Salon upon the delivery of the final pieces. 
However, the record shows that the invoice Ibarra referenced in his affidavit is
written solely to Jamar as "Hammer Built Construction." There is nothing in the
record that shows that Ibarra billed the Salon or looked to the Salon for payment. 

 We cannot conclude on the evidence before us that Ibarra has met his burden
to show that there is a genuine issue of material fact as to the existence of a contract
for direct payment by the Salon. See City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 678 (Tex. 1979).

 Accordingly, Ibarra's fifth issue is overruled.





 



CONCLUSION


 We affirm the judgment of the trial court.







 Laura Carter Higley 

 Justice



Panel consists of Justices Nuchia, Keyes, and Higley.

1. " " 
 - 
 
 
2. 
 - 
 - 
3. 
 
4. 
 '
 ' 
 ' 
 
 
 
 - 
' 
 - --