In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00009-CV

                                                ______________________________

 

 

WALKER
& ASSOCIATES SURVEYING, INC., AND DENNIS WALKER,  D/B/A WALKER AND ASSOCIATES
CONSTRUCTION, Appellants

 

                                                                V.

 

                                         ROYCE ROBERTS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 114th
Judicial District Court

                                                             Smith County, Texas

                                                         Trial Court
No. 07-2442-B

 

                                                                                                  


 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

            Royce
Roberts hired Walker & Associates Surveying, Inc. (WAS) and Dennis Walker
(Walker) d/b/a Walker and Associates Construction (WAC) (collectively the
Walker Group) to extend a horse training racetrack on his property.  A dispute arose as to how to build the
racetrack, workers were instructed to leave the job, and WAS filed a mechanic’s
lien affidavit on Roberts’ property. WAS filed suit on sworn account and later
WAC joined the suit and sought quantum meruit for the value of services
performed.  Roberts counterclaimed and
was awarded partial summary judgment in his favor against WAS for a fraudulent
lien and usurious interest charged by WAS. 
The remaining claims by the Walker Group were tried to a jury who found
that WAC breached the agreement and did not substantially perform under the
contract, but found Roberts suffered no damage as a result of the breach.  The jury assessed a monetary value for the
services performed by WAC, and the trial court awarded a recovery based on
quantum meruit grounds.  While WAS
actually did some survey work before the contract was entered with WAC, the
bulk of the work to the track was by WAC. 
The fact that Walker did not initially accurately designate the entity
making the claim has raised many of the legal issues.[1]

            All
parties presented points of error to this Court.  The Walker Group appeals the trial court’s
partial summary judgment.  As to the
portion of the judgment against WAS, it is alleged: Specifically, (1) the elements
of usury were not proved as a matter of law; (2) the rate of interest charged
was not illegal; (3) late fees were not “interest” under the usury statutes; (4)
any usury violation was cured; (5) the trial court erred in awarding additional
sums for the usury violation because more than twice the legal rate of interest
was not received by WAS; and (6) Walker and WAS did not knowingly file a
fraudulent lien.  They also challenge the
jury’s findings for legal and factual sufficiency and claim the trial court
erred when it admitted written statements made by WAC employees over hearsay
objections, failed to include a requested instruction, and refused to award
eighteen percent interest on the quantum meruit award.  Roberts appeals the trial court award of quantum
meruit to WAC, arguing that such an award should not be recoverable where the
jury found WAC breached its contract and did not substantially perform.   

            We
find that Roberts failed to prove as a matter of law that WAS intended to cause
financial harm when it filed the fraudulent lien.  Because WAS received no interest, as required
under Section 305.004 of the Texas Finance Code, we find the trial court erred
in awarding summary judgment and additional sums for the usury violation based
on that statute.  Although we conclude
the trial court properly determined the interest charged by WAS was usurious
under Section 305.003 of the Texas Finance Code, we note that the amount of
damage awarded presented an issue of fact. 
Thus, we affirm the summary judgment in part and reverse and remand in
part for trial on the merits.  

            However,
we affirm the trial court’s remaining portions of the judgment because we find
that legally and factually sufficient evidence supported the jury’s findings,
the Thacker statements were nonhearsay, the instruction the Walker Group sought
to include was improper, quantum meruit was properly awarded, and the argument
that eighteen percent interest should have been awarded on the quantum meruit
recovery was not preserved.  

I.         Factual and Procedural
History 

            A.        The Three-Foot Clay Base Requirement 

            Roberts wanted to extend his
half-mile horse training racetrack to seven-eighths of a mile. Roberts and farm
manager/trainer Tony Richey met with Walker to discuss how the track was to be
rotated and extended.  Roberts wanted to
expand a pond area and use the clay from the pond to build the track.  According to Roberts, they discussed with Walker
that it was important for the track to have three feet of clay in order to
support the 44,000-pound water truck and other equipment used to maintain the
track.  Without a three-foot base, “the
equipment wouldn’t hold up.  The horses
would dig into it and it will be a catastrophe.”  Richey also stated “there was supposed to be a
three-foot minimum.  And that’s base—that’s
what was discussed on the base” with Walker. 
Walker made sure Roberts “understood we were going to need . . . several
thousand yards of dirt.”  A field survey
was conducted,[2]
the property was staked, and a test dig determined there was clay on-site that
was sufficient to use.  A second meeting
evaluating the track’s positioning resulted in a contract providing that
Roberts would pay the lump sum price of $57,250.00

to construct a 7/8 mile Horse Track . . . as per
[Roberts’] instructions along with [Walker’s] site visit on Saturday August 28,
2004 and on Saturday October 2, 2004. 
Included in this cost will be all surveying for construction,
rotovating, bladeing, excavating and compaction of material to be used from the
pond area (around trees) in order to have the clay and sod to construct the
race track. . . . Lake around trees will need to be a minimum of 140ft wide x
8ft deep with a 4 to 1 slope on the sides in order to have enough material to
construct the track. 

 

            WAC’s
crews started working two weeks after the contract was signed on October 4,
2004.  The crew first pulled off the sod,
used a rotovator to till the clay, compacted it, and made a road base.  WAC sent the first bill of $5,735.00, ten
percent of the lump sum, on October 25, 2004, and was paid in full.  However, because vegetation was tilled into
the soil, preventing proper compaction, the soil had to be removed from the
track.  This caused the track to fall “below
grade,” meaning that the lower elevation of the track caused the south end of
the track to retain water and it became dangerous for the horses to train on. 

            B.        Walker Decides to Forego the Three-Foot Clay Base and Pulls
the Crew from the                                     Job

 

            Walker,
who never built a racetrack, and had never used a three-foot clay base, asked
WAC’s supervisor and foreman, David Thacker, to confirm the three-foot
requirement with Richey.  Thacker
conveyed to Walker over the telephone that Richey said, “If you don’t put three
foot of clay, you’re not going to get paid.” 
Walker told Thacker to “[l]oad everything and get out.  We’re not - - I’m not spending no more on
something that somebody is making a decision like this.”  Walker justified his actions by telling the
jury, “[W]e don’t put three foot of clay on anything,” “that’s just absurd to
have three foot of clay on a project with a 1,200 pound horse,” and “if you’re
going to put three foot of clay on this, it takes an area the width of a
football field and three-and-a-half football fields and eight-foot deep.”  Walker also told the jury he was instructed
by Roberts and Richey “to put some one foot of clay, max, because if you get it
too hard - - whatever it does.”  

            Roberts
testified WAC did not finish even forty percent of the work contracted for, and,
because it had to be redone, WAC’s work was of no use.  To finish the job, Roberts had to purchase a
scraper, rent a blade, compactor, and dozer, and had to hire another
contractor.[3]   

            C.        Walker’s Employees Convey Their
Understanding of the Three-Foot Requirement 

            Walker
hung up the telephone with Thacker. 
Thacker, and his son Allen, who was the equipment operator, both
immediately conveyed to Richey “[w]e understood we were supposed to put three
foot.”  Richey asked the Thackers to put
their understanding in writing.  They
agreed, and each signed a document stating they were 

told on different occasions to put three feet of
clay base on the racetrack located at 12751 Highway 110 North, Tyler, Texas, by
Dennis Walker.  This is what was agreed
to by Dennis Walker and Royce Roberts. 
On 11-4-04, was told to pick up equipment and leave by Dennis Walker,
that he was not putting over one foot of clay on track.  

 

            D.        Actions Taken After the Crew Abandons the
Job

            Because
Walker believed fifty percent of the work was done in the nine and a half days
after the first invoice was sent, WAC sent a November 4, 2004, invoice for
$22,940.00.  The same day, WAS
filed a mechanic’s lien in volume 7650, page 474 of the county clerk’s official
public records.  The affidavit for
mechanic’s lien, which Walker signed under penalty of perjury, stated WAS “performed
labor and furnished material to improve [Roberts’] real property” and that “the
amount of $29,133.10 . . . remain[ed] unpaid and [was] due and owing to
claimant, Walker & Associates
Surveying, Inc.”  Walker admitted
his affidavit was incorrect because WAC, not WAS, was the correct claimant.[4]    

            After
nonpayment by Roberts, WAS
filed a suit on sworn account stating it sold Roberts a service and that he “accepted
each item and became bound to pay Plaintiff its designated price.”  The affidavit in support of the suit on sworn
account, signed by Walker, listed the principal balance on the account as
$25,148.73, contrary to both the final invoice and affidavit in support of the
mechanic’s lien.  Although the contract
between Roberts and WAC was not signed until October 4, 2004, and work by WAC
on the project did not begin until two weeks after, the affidavit stated the
date the debt became payable was May 3, 2004.[5]  Produced records show that WAS was charging
Roberts $35.00 per month as a late fee, and Walker stated in his deposition
that 1.5 percent interest per month (eighteen percent interest per annum) was
being charged even though the contract did not discuss such fees and
interest.  

            In the meantime,
Roberts filed counterclaims alleging WAS filed a fraudulent lien because
Roberts had no contract with WAS, the lien had expired, and the late fees and
interest were usurious under Sections 305.003 and 305.004 of the Texas Finance
Code.  A motion for partial summary
judgment on the counterclaims was filed.[6]  Roberts attached Walker’s deposition wherein
he admitted the affidavit in support of lien and affidavit in support of the
sworn account were incorrect because they had the wrong claimant, wrong amount
due, that there was no authority to charge a finance charge, and the late fee was
not authorized by contract.  Roberts also
attached invoice summaries up to May 26, 2006, showing that the principal
amount due to WAS was $1,979.76.  He
alleged that the interest and late fees charged up to that date was
$1,750.00.  Walker’s summary judgment
evidence in response stated that even though the original petition and lien
claim were styled on behalf of Walker Surveying, Inc., only, he intended to
include the debt owed to WAC.  The trial
court granted the partial summary judgment against WAS, awarded Roberts
$8,385.60 for the usury violation, $10,000.00 on the fraudulent lien claim,
declared the lien null and void, and set it aside.  The amount of attorney’s fees was left for
determination at trial. 

            When
clarifying its ruling, the trial court stated:

In granting Defendant’s motion, the Court held
that Plaintiff (1) violated Tex. Fin. Code § 305.003 by charging interest
greater than the legal rate of 6% per annum, and (2) violated § 305.004 by
charging more than twice the legal rate of interest.  As a result, the Court awarded $8,385.60 as
the damages provided by §305.003 and §305.004. 
Included in this amount was an award of $1,979.76 for “the principal
amount on which the interest is charged and received” as provided by Tex. Fin.
Code §305.004.  Therefore, the Court’s
Partial Summary Judgment adjudicated Plaintiff’s claim for $1,979.76 against
Plaintiff and in favor of Defendant. 
Because this claim for $1,979.76 is the only claim of Plaintiff Walker
Surveying & Associates, Inc., against Defendant (other than claims for
attorney’s fees and interest based upon such claim), Plaintiff Walker Surveying
& Associates, Inc., is not entitled to any recovery against Defendant.  

 

            After
the motion for summary judgment was filed, WAS amended its petition to include
WAC as a party plaintiff, and also added a quantum meruit cause of action.  After trial on these claims only, the jury
found that WAC failed to comply with the agreement, that the contract was not
substantially performed, and that their noncompliance was not excused.  But the jury also found that Roberts did not
sustain any damages as a result of the breach. 
Even though the jury awarded substantial attorney’s fees due to the
breach, these attorney’s fees were not granted by the trial court since Roberts
did not prevail on the underlying damage issue.  The jury also found that the reasonable value
of work performed by WAC was $13,200.00. 
The final judgment incorporated the trial court’s partial summary
judgment, set prejudgment and post-judgment interest on Roberts’ usury and
fraudulent lien claims at five percent, awarded $655.75 in attorney’s fees for
each claim, and awarded $1,500.00 on each claim as attorney’s fees if
successfully defended on appeal.[7]  The trial court also awarded WAC $13,200.00
on its quantum meruit claim and set prejudgment interest at five percent.  

 

 

 

II.       Summary
Judgment on Fraudulent Lien and Usurious Interest Under Section           305.004 of the Texas Finance Code Was
Improper

 

            A.        Standard of Review 

            We will review de novo the
trial court’s partial summary judgment.  Provident Life & Accident Ins. Co. v.
Knott, 128 S.W.3d 211, 215 (Tex. 2003); Lamar Corp. v. City of Longview, 270 S.W.3d 609, 613 (Tex.
App.—Texarkana 2008, no pet.).  Summary
judgment is proper if Roberts established that there was no genuine issue of
material fact and that he was entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); French v. Gill, 252 S.W.3d 748, 751 (Tex.
App.—Texarkana 2008, pet. denied); Powers v. Adams, 2 S.W.3d 496, 497
(Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985)).  In deciding whether there was a disputed
material fact issue which precluded partial summary judgment, proof favorable
to the Walker Group will be taken as true. 
Nixon, 690 S.W.2d at 548–49. 
We will indulge every reasonable inference in their favor.  Limestone Prods. Distrib., Inc. v. McNamara,
71 S.W.3d 308, 311 (Tex. 2002). 

            B.        Fact Issues Regarding Intent to Financially Harm Roberts
Precluded Summary                              Judgment on Fraudulent Lien 

 

            The party asserting that
a claimed lien is a fraudulent lien has the burden to prove the requisite
elements in the statute.  Aland v. Martin, 271 S.W.3d 424, 430
(Tex. App.—Dallas 2008, no pet.).  The
fraudulent lien statute states:

 

 

 

(a) A
person may not make, present, or use a document or other record with: 

 

            (1) knowledge that the document or
other record is a fraudulent court record or a fraudulent lien or claim against
real or personal property or an interest in real or personal property; 

 

            (2) intent that the document or
other record be given the same legal effect as a court record or document of a
court created by or established under the constitution or laws of this state or
the United States or another entity listed in Section 37.01, Penal Code,
evidencing a valid lien or claim against real or personal property or an
interest in real or personal property; and 

 

            (3) intent to cause another person
to suffer: 

 

                        (A) physical injury; 

 

                        (B) financial injury; or


 

                        (C) mental anguish or
emotional distress. 

 

Tex. Civ. Prac. & Rem. Code Ann. § 12.002 (Vernon Supp. 2009). 

            Thus, to establish a
fraudulent lien in this case, Roberts was required to show that Walker or WAS (1)
made, presented, or used a document with knowledge that it was a fraudulent
lien; (2) intended the document be given legal effect; and (3) intended to
cause Roberts financial injury.  See Tex.
Civ. Prac. & Rem. Code Ann. § 12.002(a).[8]  

            It
should be noted that WAS did some survey work, of approximately $2,000.00
value, without any written contract.  WAC
entered into a contract with Roberts for the construction portion of the
project and alleges it was owed approximately $25,000.00.   

            We
begin this discussion by focusing on the
third element:  whether there was summary
judgment evidence demonstrating Walker intended for Roberts to suffer financial
harm.  See Taylor Elec. Servs.
v. Armstrong Elec. Supply Co.,
167 S.W.3d 522, 531–32.  The need
for a finding on intent was demonstrated in Aland,
where a trial court awarded judgment based on a fraudulent lien after a bench
trial.  Aland, 271 S.W.3d at 424,
426.  The trial court found the elements
of a fraudulent lien were met because:  (1)
a deed of trust was taken out on community property in fraud without consent of
Aland’s spouse; (2) the action created a lien on the community property; and (3)
Aland was a family lawyer who should have known better than to take out a lien
in fraud.  Id. at 428 n.2.  In reversing
the trial court’s judgment, the court of appeals reasoned that these findings
only went to the first element under the statute—knowledge that the lien was
fraudulent.  Id. at 430.  The trial court’s
finding that the lien was created with intent to cloud title on the property
went to the second element—intent that the fraudulent lien have effect.  Id.  After noting that there was no request for
finding on intent to cause harm and that the record did not support such a
finding if requested, the court concluded the evidence was legally insufficient
to support such a finding.  Id. at 426, 431.  The court of appeals also rejected the
argument that intent to harm be “inferred” from “common knowledge.”  Id. at
431; see also Preston Gate v. Bukaty, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008,
no pet.) (reversing summary judgment and rejecting notion that intent to cause
financial injury was “self-evident”).  

            As
in Aland, Roberts’ arguments with
respect to intent to cause financial harm pertain to the first two elements of
a fraudulent lien.  He points to the
uncontested evidence that there was no
contract with WAS and that he did not owe the amount listed in the lien.[9]  See
Tex. Prop. Code Ann. § 53.021(a)(2)
(Vernon 2007) (only persons with contract entitled to file lien); Taylor
Elec. Serv., Inc., 167 S.W.3d at 531–32 (Tex. App.—Fort Worth 2005, no
pet.) (incorrect amount on lien) (same); Centurion Planning Corp. v.
Seabrook Venture II, 176
S.W.3d 498, 505 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  He identifies that the affidavit supporting
the lien stating a balance of “$29,133.10 . . . remain[ed] unpaid” was signed
on November 4, 2004, that the invoice was printed on that date, and that the
Thackers were told to abandon the property on that date.  In other words, there was no evidence that
Roberts had even received an invoice before the lien was filed.  Roberts also points to Walker’s deposition
revealing his knowledge that the lien was incorrect and should have stated that
the claim was made by Walker Associates Construction, Inc.  By filing the lien, and placing a cloud on
Roberts’ title, there is evidence that WAS, acting through Dennis Walker, intended
the lien to be given legal effect.  The
evidence from Walker was that he knew, at the time the deposition was taken,
that the lien affidavit was incorrect.  

            This evidence does not
establish as a matter of law that he originally presented the lien affidavit
for filing with knowledge that it was fraudulent.  WAC and WAS both had done some work on the
property; WAC had a written contract which would authorize it to file a lien,
whereas WAS did not.  This statute does
not define the term “fraudulent,” but generally it is a knowing
misrepresentation of the truth or concealment of a material fact to induce
another to act to his or her detriment.  See Black’s
Law Dictionary 730 (9th ed. 2009).  We see a distinction in an affidavit that is
factually inaccurate in some respect and one that is attempting to perpetrate a
fraud.  While this lien may be invalid
and unenforceable as filed, we believe there is a fact issue on whether it is
fraudulent.  

            Next, Roberts cites Taylor Electrical Services for the
proposition that Walker’s letter informing Roberts of the lien stating, “Upon
receipt of payment in full this lien will be removed” was evidence of intent to
cause financial harm.  167 S.W.3d 522.  There
are two key differences distinguishing this case from Taylor.  First, Taylor involved a jury finding.  Id. at
525.  Second, the evidence of intent in Taylor was a letter threatening to file
a lien and stating, “We do not wish you any harm in your business,” evidencing
knowledge that the filing of a lien could potentially cause financial
harm.  Id. at 531.  We decline to
find that the letter sent by Walker in this case established intent as required
by the fraudulent lien statute.  At most,
it creates a genuine issue of material fact for a jury’s resolution.  

            Section 51.901(c) of the
Texas Government Code provides that “[f]or purposes of this section” a document
or instrument “is presumed to be fraudulent” if:

[T]he
document or instrument purports to create a lien or assert a claim against real
or personal property or an interest in real or personal property and: 

 

            . . . .

 

(B) is not
created by implied or express consent or agreement of the obligor, debtor, or
the owner of the real or personal property or an interest in the real or
personal property, if required under the laws of this state, or by implied or
express consent or agreement of an agent, fiduciary, or other representative of
that person.

 

Tex. Gov’t Code Ann. § 51.901(c)(2)(B) (Vernon Supp. 2009). 


            As a final attempt at
meeting the statutory requirements of Section 12.002, Roberts suggests that
this Court should apply the Government Code presumptions.  Roberts’ argument is based on a reference to
this Government Code section in Section 12.006 of the Texas Civil Practice and
Remedies Code, which discusses awarding plaintiffs costs of suit.  Our sister court has rejected Roberts’
suggested application.  Centurion Planning Corp., 176 S.W.3d at
507.  The court in Centurion reasoned that the Legislature did not define fraudulent
lien in the Texas Civil Practice and Remedies Code, and could have easily
referred to Section 51.091.  Id.  In
its reasoning, the court pointed out that the Texas Government Code did not
define fraudulent lien, but rather established presumptions which would apply
under certain circumstances.  Id.  As our sister court did in Centurion, we decline to extend
application of the Government Code presumptions to Section 12.002.  Moreover, a plain reading of Section 12.002
suggests that even should this Court apply the Government Code presumption, it
would only aid Roberts with respect to the first element of the fraudulent lien
statute.  In other words, evidence of
intent as a matter of law would still be required. 

            Because there was a fact
question on the issue of Walker’s knowledge that the document was a fraudulent
lien and the intent to cause financial harm, we reverse the trial court’s
fraudulent lien summary judgment against WAS and remand for trial on the
merits. 

            C.        Usurious Interest Award Under Section
305.004 Was Error 

            Section 305.004 provides
for additional monetary damage if a creditor charges and receives more than twice the legal rate of interest.  Tex.
Fin. Code Ann. § 305.004 (Vernon 2006).  Compare
with § 305.003 (states creditor liable if he or she “charges or receives”
usurious interest).  Because there is no
summary judgment evidence demonstrating WAS received any interest payments, we
hold that granting summary judgment for usurious interest under Section 305.004
of the Texas Finance Code was error.  See C&K
Invs. v. Fiesta Group, Inc., 248 S.W.3d 234, 250–51 (Tex. App.—Houston [1st
Dist.] 2007, no pet.); Aguilar v.
Anderson, 855 S.W.2d 799, 803 (Tex. App.—El Paso 1993, writ denied) (citing
Cook v. Frazier, 765 S.W.2d 546, 553
(Tex. App.—Fort Worth 1989, no writ)).  

            The trial court’s
summary judgment based on Section 305.004 and the applicable attorney’s fee
award are reversed and remanded for trial on the merits.[10]


            D.        While
Roberts Established Elements of Usury Under Section 305.003, Damage                             Fact Questions Remained


 

            WAS claims the essential
elements of usury were not shown.  The
essential elements of a usurious transaction are:  “(1) a loan of money, (2) an absolute
obligation to repay the principal, and (3) the exaction of a greater
compensation than allowed by law for the use of the money by the borrower.”  First
Bank v. Tony’s Tortilla Factory, Inc., 877 S.W.2d 285, 287 (Tex.
1994).  The Texas Finance Code defines
the term “loan” as “an advance of money that is made to or on behalf of an
obligor, the principal amount of which the obligor has an obligation to pay the
creditor,” and an “obligor” is “a person to whom money is loaned or credit is
otherwise extended.”  Tex. Fin. Code Ann. § 301.002(a)(10), (13)
(Vernon 2006).  A “creditor” is “a person
who loans money or otherwise extends credit.” 
See Tex. Fin. Code Ann. § 301.002(a)(3) (Vernon 2006).  

                                    1.         A loan of money

            WAS argues that Roberts
did not establish a loan of money as a matter of law.  This argument was addressed and rejected in 271 Truck Repair & Parts, Inc. v. First
Air Express, Inc., which “conclude[d] that the . . . plain meaning of “creditor”
includes suppliers of goods or services when they charge interest on past due
amounts.”  No. 03-07-00498-CV, 2008 WL
2387630, at *9 (Tex. App.—Austin June 11, 2008, no pet.) (mem. op.).  In its reasoning, 271 Truck Repair cited 
several Texas cases holding that suppliers of goods or services charged
usurious interest rates.  Id. (citing Strasburger Enters., Inc. v. TDGT Ltd. P’ship, 110 S.W.3d 566, 574
(Tex. App.—Austin 2003, no pet.); William
C. Dear & Assocs., Inc. v. Plastronics, Inc., 913 S.W.2d 251, 253–54
(Tex. App.—Amarillo 1996, writ denied) (usury violation based on interest
charged in invoice for investigatory services); Douglas Electronics, Inc. v. Pinnacle Sys., Inc., 805 S.W.2d 852,
856–57 (Tex. App.—Corpus Christi 1991, no writ); Commerce, Crowdus & Canton, Ltd. v. DKS Constr., Inc., 776
S.W.2d 615, 616–18 (Tex. App.—Dallas 1989, no writ) (applied usury statutes to
extension of credit under construction contracts)).  Similarly, we find WAS to be a creditor
because services were supplied and interest was charged on past due
amounts.  See Broady v. Johnson,
763 S.W.2d 832, 834 (Tex. App.—Texarkana 1988, no pet.) (landowner charged
usurious interest on contract for service allowing cattle to be pastured on his
land). 

                                    2.        An
absolute obligation to repay the principal

             WAS filed a suit on sworn account stating
Roberts was “bound to pay Plaintiff its designated price.”  Walker signed an affidavit in which he stated
that “$25,148.73 [was] due and payable,” implying an obligation to repay the
principal balance.  Nevertheless, WAS
next asserts that even if it can be considered a creditor, there was no
absolute obligation that the principal be repaid.  

            In rejecting this
argument, we note that courts have found usury statutes applicable to open
accounts because they extend credit from the date of purchase to the date of
payment, which is expected to be repaid. 
Domizio v. Progressive County Mut.
Ins. Co., 54 S.W.3d 867, 874 (Tex. App.—Austin 2001, pet. denied) (“The
normal loan transaction involves credit, and in an open account transaction,
credit is extended from the date of purchase to the date of payment.  A violation of the usury statute in those
cases results from a credit transaction.”); Commerce,
Crowdus & Canton, 776 S.W.2d at 616–18; Potomac Leasing Co. v. Housing Auth. of City of El Paso, 743
S.W.2d 712, 713 (Tex. App.—El Paso 1988, writ denied) (“Under the open account
transaction, credit is extended from the date of purchase to the date of
payment.”).  This theory is consistent
with holdings in cases where invoices for services rendered in connection with
a contract supported the trial court judgments finding usury violations.  William
C. Dear & Assocs., 913 S.W.2d at 253–54; Douglas Electronics, Inc., 805 S.W.2d at 856—57; Commerce,
Crowdus & Canton, 776 S.W.2d at 616–18; Broady, 763 S.W.2d at 834.  

            Thus, we conclude WAS “otherwise
extended credit” to Roberts amounting to an absolute obligation by Roberts to
repay the principal.  Tex. Fin. Code Ann. § 301.002(a)(3).  This element has been met. 




 

                                    3.         Exaction
of greater compensation than allowed by law

            Next, we address whether
Roberts was charged interest in an amount greater than allowed by law.  Section 302.002 of the Texas Finance Code
states, “[i]f a creditor has not agreed with an obligor to charge the obligor
any interest, the creditor may charge and receive from the obligor legal
interest at the rate of six percent a year.”  Tex.
Fin. Code Ann. § 302.002 (Vernon 2006).  
Here, as per Walker’s admission, since there was no contract with WAS
establishing the interest rate, “the statutory rate of six percent [was] read
into the agreement and bec[ame] the maximum rate allowed on the transaction.”  All
Seasons Window & Door Mfg. v. Red Dot Corp., 181 S.W.3d 490, 497 (Tex.
App.—Texarkana 2005, no pet.); Broady,
763 S.W.2d at 834.  

            Walker cites this Court
to the Prompt Payment Act in Sections 28.002 and 28.004 of the Texas Property
Code to support his argument that the Act legally allowed 1.5 percent to be
charged each month.  See Tex. Prop. Code Ann.
§§ 28.002, 28.004 (Vernon 2000).  That statute
allows a contractor to require payment for an amount “that is allowed to the
contractor under the contract for properly performed work . . . .”  An unpaid invoice bears interest at 1-1/2 percent
a month.  Id.  Here, WAS billed Roberts
for $22,940.00, an amount not due and owing to it.  Thereafter, WAS added late charges and
interest of 1-1/2 percent monthly. 
Accordingly, the Prompt Payment Act is inapplicable to WAS in this
instance.   

            “A creditor who charges
or receives legal interest” greater than six percent per annum “is liable to
the obligor.”   Tex. Fin. Code Ann. § 305.003 (Vernon 2006).  It is undisputed that WAS charged more than
the six percent maximum rate allowed. 
Thus, Roberts met its burden to prove interest charged by WAS was
usurious under Section 305.003.  

            E.        WAS Did Not Cure This Usurious Interest
Violation 

            The applicable statute
regarding cure states:

With
respect to a defendant filing a counterclaim action alleging usurious interest
in an original action by the creditor, the defendant shall provide notice[11]
complying with Subsection (b) at the time of filing the counterclaim and, on
application of the creditor to the court, the action is subject to abatement
for a period of 60 days from the date of the court order. During the abatement
period the creditor may correct a violation. As part of the correction of the violation, the creditor shall offer to
pay the obligor’s reasonable attorney’s fees as determined by the court
based on the hours reasonably expended by the obligor’s counsel with regard to
the alleged violation before the abatement. A creditor who corrects a violation
as provided by this subsection is not liable to an obligor for the violation.[12]  

 

Tex. Fin. Code Ann. § 305.006(d) (Vernon 2006) (emphasis added).

            WAS argues that the
usurious interest charges were cured because it only prayed for the principal
balance in its pleadings, and it produced a document evidencing some sort of
credit to Roberts for the purported usurious interest after Roberts’ partial
motion for summary judgment was filed.  It
relies on a single case from the Fifth Circuit to support this position, In re CPDC, Inc., 337 F.3d 436 (5th Cir.
2003).  In CPDC, the court decided that a pre-suit notice sent by the
creditor, which informed the debtor that the interest it charged was usurious
and renegotiated the interest, renounced any right to receive usurious interest
and was thus sufficient to cure the violation. 
Id. at 439, 446.  Importantly, the court’s opinion was based on
Section 305.103 of the Texas Finance Code, which states:

(a) A creditor is not liable to an obligor for a violation of this
subtitle if:

(1) not
later than the 60th day after the date the creditor actually discovered the
violation, the creditor corrects the violation as to that obligor by taking any
necessary action and making any necessary adjustment, including the payment of
interest on a refund, if any, at the applicable rate provided for in the
contract of the parties; and

 

(2) the creditor gives written notice to the
obligor of the violation before the obligor gives written notice of the
violation or files an action alleging the violation.

 

Tex. Fin. Code Ann. § 305.103 (Vernon 2006) (emphasis added). 


            This statute, addressing
pre-suit cure, does not apply to this case because WAS did not give Roberts
notice of the usury violation first, and the attempted cure came only after the
filing of suit.  By failing to offer to
pay Roberts’ attorney’s fees, WAS failed to comply with post-suit cure statute Section
305.006(d).  Bair Chase Prop. Co., 260
S.W.3d at 143 n.6 (distinguishing Pagel
v. Whatley, 82 S.W.3d 571 (Tex. App.—Corpus Christi 2002, pet. denied),
held creditor cured usury violation by deleting charges of interest and making
demand for principal only because it was based on Section 305.103);[13]
Strasburger Enters., Inc., 110 S.W.3d
at 577 (holding under Section 305.103 that “a pleading alone is insufficient to
serve as a notice to correct a usurious violation when not delivered to the
obligor before the obligor communicates notice of a violation to the creditor”).


            F.        There Are Fact Questions Regarding the
Trial Court’s Usurious Interest Award 

            The trial court awarded
a total of $8,385.60 for alleged
violations of Sections 305.003 and 305.004, but erred in granting
summary judgment under Section 305.004. 
Therefore, in accordance with Section 305.003, WAS was liable to Roberts only for an amount “equal to the
greater of:  (1) three times the amount
computed by subtracting the amount of legal interest allowed by law from the
total amount of interest charged or received; or (2) $2,000.00 or twenty
percent of the amount of the principal, whichever is less.”  Tex.
Fin. Code Ann. § 305.003. 

            The
legal interest is simple to calculate.  The
trial court determined, with support from WAS invoices presented during summary
judgment, that “the principal amount on which the interest [was] charged and
received” was $1,979.76.  Twenty percent
of this principal amount is $395.95. 
However, interest charged presents an issue of fact. 

            It
appears that the trial court relied on a summary prepared by Roberts as to the
amount of interest charged indicating the total finance and interest charges
was $1,750.95.  The summary adds late
fees assessed at $35.00 per month.  WAS
contends it was error for the trial court to include late fees into the damage
calculation.  We disagree.[14]  Several Texas courts have held that late fees
without contractual right to charge them are considered usurious interest.  Seiter
v. Veytia, 756 S.W.2d 303, 305 (Tex. 1988) (citing Dixon v. Brooks, 604 S.W.2d 330, 333 (Tex. Civ. App.—Houston [14th
Dist.] 1980, writ ref’d n.r.e.) (reasoning late charge is “compensation for the
. . . detention of money” under Section 301.002(4) and is therefore interest); Windhorst v. Adcock Pipe & Supply,
547 S.W.2d 260, 260–61
(Tex. 1977) (holding finance charge on open account was interest); Watson v. Cargill, Inc., Nutrena Div.,
573 S.W.2d 35, 42 (Tex. Civ. App.—Waco 1978, writ ref’d n.r.e.)).[15]  Thus, the trial court was authorized to include
the late fees into the damage calculation. 

            However,
Roberts’ summary showing that the total amount charged for interest and late
fees was $1,750.95 presents a fact question. 
The invoices sent by WAS to Roberts are in the record.   Beginning on July 30, 2004, late fees
(finance charge) and interest were charged to Roberts beginning on a monthly
basis.  From July until December 2004,
WAS sent a monthly statement to Roberts for a $35.00 late charge and an
additional amount for interest.   In
2005, it appears no statement was sent until December 30, 2005, at which time a
statement for $630.00 was sent for a late charge for eighteen units (months) at
$35.00 per unit.  Likewise, on the same
date a statement was sent for $505.01 as finance charges on the overdue
balance.  Both of these December
statements appear to include all interest and late charges to that date.  However, the summary presented by Roberts
calculates the total amount of interest charged, including late fees, to
include each of the monthly charges in 2004 and also the summarized balance as
noted in the December 2005 statements. 
If that is correct, the 2004 charges were included twice.  The factual dispute is further demonstrated
by a final WAS invoice suggesting that the total amount of late fees and
interest charged was actually $1,521.98. 
$1,521.98 is the result of $1,750.95 less the additional 2004 charges
listed on the summary.  

            So
it appears a fact question exists as to whether the 2004 charges for interest
and late fees were included twice as the interest charged in calculating
damages.    

              We would modify the judgment and calculate
the correct amount if the evidence established conclusively that a double
recovery for 2004 interest was had. 
However, our observations merely present a fact issue which precluded
summary judgment.  Thus, we remand the
issue of amount of damage to be awarded. 

III.      Admission of the Thacker
Statements Was Proper            

            The
Thacker statements read, “I . . . was told on different occasions to put 3 ft
of clay base on the racetrack by . . . Dennis Walker and this is what was
agreed to by Dennis Walker and Royce Roberts.”  
“Hearsay included within hearsay is not excluded under the hearsay rule
if each part of the combined statements conforms with an exception to the
hearsay rule.”  Tex. R. Evid. 805.  The
Walker Group contends the trial court erred in failing to sustain their
objection that the Thacker statements contain hearsay within hearsay.  However, according to Texas Rule of Evidence
801, the statements are nonhearsay within nonhearsay.

                   The admission or exclusion of
evidence is a matter within the sound discretion of the trial court.  Daniels v. Yancey, 175 S.W.3d 889, 895
(Tex. App.—Texarkana 2005, no pet.) (citing City of Brownsville v. Alvarado,
897 S.W.2d 750, 753 (Tex. 1995)).  Thus,
we review the admission of the Thacker statements for abuse of discretion.  Id. 
A trial court abuses its discretion when it acts without regard for
any guiding rules or principles.  Holtzman
v. Holtzman, 993 S.W.2d 729, 734 (Tex. App.—Texarkana 1999, pet. denied)
(citing Downer v. Aquamarine Operators, 701 S.W.2d 238 (Tex. 1985)).

            Hearsay
“is a statement, other than one made by the declarant while testifying at the
trial or hearing, offered in evidence to prove the truth of the matter
asserted.”  Tex. R. Evid. 801(d). 
Declarations of third persons may be binding on a party as vicarious
admissions when made by the party’s agent or servant concerning a matter within
the scope of the agency or employment and made during the existence of the
relationship.  35 Tex. Jur. 3d Evidence
§§ 232, 234 (2008).   Thacker’s statement
is such a declaration.  A “statement by
the party’s agent or servant concerning a matter within the scope of his or her
agency or employment, made during the existence of the relationship” is
considered to be an admission by a party opponent and is not hearsay.  Tex.
R. Evid. 801(e)(2)(D).  David
Thacker was WAC’s foreman and supervisor. 
Allen Thacker was the equipment operator.  Both Thackers were employed by the Walker
Group and were authorized to discuss the job requirements, including the amount
of clay needed on the track, with Roberts and Richey.  The trial court was justified in its implied
finding that the statements made by the Thackers, that they were “told on
different occasions to put three feet of clay base,” “this is what was agreed
to by Dennis Walker and Royce Roberts,” they were told on November 4, 2004, “to
pick up all . . . equipment and leave,” and that Walker “was not putting over
one foot of clay on track,” were matters within the scope of their employment
and were made during the existence of their employment relationship with
Walker.  See Southmark Mgmt. Corp. v.
Vick, 692 S.W.2d 157, 160 (Tex. App.—Houston [1st Dist.] 1985, writ ref’d
n.r.e.).

             Further, any statement by a party opponent is
admissible against that party.  Bay Area Healthcare Group, Ltd. v. McShane,
239 S.W.3d 231, 235 (Tex. 2007).  The
Thacker statement implies that Walker told Thacker to put down three feet of
clay.  This would be an admission by
party opponent since the statements were being offered by Roberts.  See
Trencor, Inc. v. Cornech Mach. Co.,
115 S.W.3d 145, 151–52
(Tex. App.—Fort Worth 2003, pet. denied). 
Thus, the trial court correctly determined the Thacker statements were
not hearsay.   

IV.      Legally and Factually
Sufficient Evidence Supported the Jury Verdict

            A
jury was empanelled to determine the remaining issues.  The test for legal sufficiency
is “whether the evidence at trial would enable reasonable and fair-minded
people to reach the verdict under review.” 
Hooper v. Smallwood, 270 S.W.3d 234, 240 (Tex. App.—Texarkana
2008, pet. denied) (citing City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005)).  In making this
determination, we credit favorable evidence that could be found by a reasonable
juror and disregard contrary evidence unless a reasonable juror could not.  Id.  As long as the evidence falls within the zone
of reasonable disagreement, we will not substitute our judgment for that of the
juror.  Id.  Although we consider the evidence in a light
most favorable to the challenged findings, indulging every reasonable inference
that supports them, we will not disregard evidence that allows only one
inference.  Id.

            Since
the Walker Group attacked the factual sufficiency of the jury’s verdict, based
upon its failure to find WAC substantially performed under the contract as
alleged in its amended petition, they must now demonstrate that the adverse
finding was against the great weight and preponderance of the evidence.  Id. (citing Dow Chem. Co. v. Francis,
46 S.W.3d 237, 242 (Tex. 2001); In re Estate of Steed, 152 S.W.3d 797,
806 (Tex. App.—Texarkana 2004, pet. denied)). 
In conducting our review of this issue, we consider and weigh all of the
evidence and set aside a verdict only if the evidence is so weak or if the finding
is so against the great weight and preponderance of the evidence that it is
clearly wrong and unjust.  Id.
(citing Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986); Steed, 152 S.W.3d at 806). 
We also keep in mind that the jury was the sole judge of the credibility
of the witnesses and the weight to be given their testimony.  Id. (citing Golden Eagle Archery,
Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003)). 

            The
jury found that WAC failed to comply with the construction agreement, while
Roberts did comply.  The contract simply
provided that Roberts would pay the lump sum price of $57,250.00 to WAC “to
construct a 7/8 mile Horse Track . . . as per [Roberts’] instructions.”  It is undisputed that WAC did not complete
the racetrack and that Walker ordered the Thackers to abandon the job.   This would enable a reasonable and
fair-minded jury to reach the conclusion that WAC breached the agreement.  The primary dispute of the parties was the
requirement of three feet of clay as a base. 
This issue was contested and a fact issue was presented to the jury,
which it resolved in Roberts’ favor. 
Combined with the wording of the contract implying payment conditioned
upon performance per Roberts’ instructions, and evidence tending to show three
feet of clay was required, we conclude the evidence was not so weak or the
finding so against the great weight and preponderance of the evidence that it
was clearly wrong and unjust.  

            The
Walker Group also argued the evidence was insufficient to support the jury
finding that WAC did not substantially perform the contract.  At best, Walker stated he believed fifty
percent of the work was completed.  This
testimony was countered by Roberts’ and Richey’s testimony explaining that the
track was under grade when left and that the track had to be re-tilled since
Walker tilled the vegetation into the soil.  
Roberts also testified that it took a substantial amount of time and
money to complete the project.  Again,
uncontroverted evidence established the Walker Group walked out on the job,
supporting a finding that they did not intend to comply with the contract in
good faith.  We conclude the evidence was
legally and factually sufficient to sustain the jury’s finding that WAC did not
substantially perform the contract.[16] 

V.       The Trial Court Did Not Err
in Denying Walker’s Requested Jury Instruction

            An instruction is proper if it might assist the
jury in answering the submitted questions, accurately states the law, and finds
support in the pleadings and evidence.  Tex. R. Civ. P. 277; Elbaor v. Smith,
845 S.W.2d 240, 243 (Tex. 1992); Wal-Mart Stores, Inc. v. Middleton, 982 S.W.2d 468, 470 (Tex. App.—San
Antonio 1998, pet. denied); La. & Ark. Ry. Co. v. Blakely, 773 S.W.2d 595, 598 (Tex.
App.—Texarkana 1989, writ denied).  A
trial court is afforded more discretion when submitting instructions than when
submitting questions.  Middleton, 982 S.W.2d at 470.
 Since the trial court has considerable discretion to determine necessary
and proper jury instructions, we review a trial court’s decision to refuse a
particular instruction under an abuse of discretion standard.  Shupe v. Lingafelter, 192 S.W.3d 577, 579 (Tex.
2006); In re V.L.K., 24
S.W.3d 338, 341 (Tex. 2000); La. & Ark. Ry., 773 S.W.2d at 598.  An
abuse of discretion occurs where a trial court acts arbitrarily, unreasonably,
without consideration of guiding principles, or clearly fails to analyze or
apply the law correctly. Middleton,
982 S.W.2d at 469; Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992); Downer, 701
S.W.2d at 241–42.  When a trial court refuses to submit a
requested instruction on an issue raised by the pleadings and evidence, we
first determine if the instruction was reasonably necessary to enable the jury
to render a proper verdict.  Shupe, 192 S.W.3d at 579; Tex. Workers’ Comp. Ins. Fund v. Mandlbauer,
34 S.W.3d 909, 912 (Tex. 2000) (referring to Texas Rules of Civil Procedure 277
and 278).                

            WAC
asked the trial court to submit the following instruction along with the breach
of contract question:  “The Court has
determined that the contract between the parties does not require Walker &
Associates Construction to include a clay base three feet deep in constructing
the horse track.”  In submitting the
issue of breach to the jury, the trial court impliedly found that the issue of
whether three feet of clay was necessary was a disputed fact and therefore
required a jury determination.  As
written, the instruction would not assist the jury, but would be a determination
as a matter of law on a disputed fact question. 
We conclude the trial court did not abuse its discretion in denying the
proposed instruction.  

VI.      The Trial Court Did Not Err in Awarding Damages Based on Quantum
Meruit

            The
jury found that the value of WAC’s compensable work was $13,200.00, and the
trial court granted WAC a judgment against Roberts in that amount.  “As a general rule, a plaintiff who seeks to
recover the reasonable value of services rendered or materials supplied will be
permitted to recover in quantum meruit only when there is no express contract
covering those services or materials.”  Truly
v. Austin, 744 S.W.2d 934, 936 (Tex. 1988). 
There are two exceptions to the general rule.  The first applies where a party partially
performs a contract, but was prevented from completing the contract due to the
other party’s breach.  Id.  This fact situation does not exist here.  Another exception exists when a plaintiff
partially performs a unilateral contract. 
Id. at 937.  In dicta, Truly
stated that Texas courts have allowed a breaching contractor to recover under
quantum meruit where the owner has accepted and retained some benefit as a
result of a contractor’s partial performance. 
Id. (citing City of Sherman v. Connor, 88 Tex. 35, 29 S.W.
1053 (1895); City of Ingleside v. Stewart, 554 S.W.2d 939, 947 (Tex.
Civ. App.—Corpus Christi 1977, writ ref’d n.r.e.)).  

            Roberts
urges this Court to follow the general rule. 
However, another Texas Supreme Court decision reiterates the dicta in Truly
in holding that a breaching contractor can recover under quantum meruit
even where there was no substantial performance under contract.  Murray v. Crest Constr., Inc., 900
S.W.2d 342, 345 (Tex. 1995) (stating construction contracts exception to
general rule); Dobbins v. Redden, 785 S.W.2d 377, 378 (Tex. 1990); 10 Tex. Jur. 3d Building Contracts § 56 (2003); Comm.
on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury
Charges:  Business Consumer Insurance
Employment PJC 101.42, 101.46 (2008).  But see
R.M.Dudley Constr. Co. v. Dawson, 258 S.W.3d 694, 703 (Tex. App.—Waco
2008, pet. denied) (applying general rule in upholding trial court’s denial of
recovery under quantum meruit theory). 
Thus, quantum meruit was available to the Walker Group.  

            “To
recover on a claim for quantum meruit, appellant must show (1) he rendered
valuable services, (2) for appellees, (3) they accepted his services, and (4)
he rendered the services under circumstances as would reasonably notify them
that he expected to be paid.”  Johnson
v. Kruse, 261 S.W.3d 895, 901 (Tex. App.—Dallas 2008, no pet.); Tully v.
Citibank (South Dakota), N.A., 173 S.W.3d 212, 216 (Tex. App.—Texarkana
2005, no pet.).  This was done.  The jury found that WAC performed compensable
work that Roberts knowingly accepted while also knowing that WAC expected
payment.    

            In
arguing that an additional finding of unjust enrichment is necessary, Roberts
quotes Truly as follows:  “to justify a recovery in quantum meruit, the
plaintiff . . . must also show that the defendant has been unjustly enriched
and the plaintiff would be unjustly penalized if the defendant were permitted
to retain the benefits of the partial performance without paying anything in
return.”  Truly, 744 S.W.2d at
938; Dawson, 258 S.W.3d at 702. 
Based on this quote in Truly,
Roberts argues that since findings of unjust enrichment were not included in
the jury questions, the trial court erred in making the award.   In Truly,
the Texas Supreme Court held that the general rule applied—a party may not
recover under quantum meruit when there is an express contract on the
matter.  The further discussion
concerning the exception to the general rule for construction cases, including
the above quote, was dicta since Truly
did not involve a claim for construction completed, but was a claim for
services rendered to a joint venture.  Truly, 744 S.W.2d at 936.  

            The
measure of damages for a quantum meruit claim is the reasonable value of the
work performed.  Johnson, 261 S.W.3d at 902
(citing Lamajak, Inc. v. Frazin, 230 S.W.3d 786, 796 (Tex. App.—Dallas
2007, no pet.)).  The Texas Pattern Jury
Charges, upon which the trial court’s charge was based, indicate that the
measure of damages for quantum meruit is not different in construction
contracts.  Comm. on Pattern Jury Charges, State Bar of Tex., Texas
Pattern Jury Charges: Business Consumer Insurance Employment PJC 101.46,
115.6 (2008).  Well-settled pattern jury
charges should not be embellished with addendum.  Weeks Marine, Inc. v. Salinas, 225 S.W.3d 311, 319 (Tex.
App.—San Antonio 2007, pet. dism’d). 
What constitutes a reasonable compensation for benefits furnished does
not depend on any single factor, but takes into account all the evidence and
circumstances.  See 64 Tex. Jur. 3d Restitution Etc. § 34 (2009).  

            The
more recent Texas Supreme Court opinion in Murray
specifically authorized a recovery on the theory of quantum meruit based on
jury questions that were precisely the same as in this case.  Murray
v. Crest Constr., Inc., 900 S.W.2d 342 (Tex. 1995).  The jury question was: “Did Murray perform
compensable work for Crest on the Borden and Cooper Jobs?”  Crest
Constr. v. Murray, 888 S.W.2d 931, 952 (Tex. App.—Beaumont 1994), rev’d, 900 S.W.2d 342 (Tex. 1995).  The definition of compensable work is exactly
the same as the jury instruction here.  Id.  The appellate court recognized “this is a
submission on the quantum meruit theory of recovery,” but held quantum meruit
was unavailable because an express contract covered services provided by
Murray, and the contract price was stipulated. 
Id.  The Texas Supreme Court reversed, and based on
those jury findings, held: 

Generally, a party may not recover under quantum
meruit when there is an express contract covering the services or materials
furnished.  [citing Truly]  Construction
contracts are an exception to this rule. 
It is undisputed that Murray has failed to substantially perform the
Borden and Cooper jobs, a condition precedent to recovery under the express
contract.  Murray may bring an action in
quantum meruit to recover the      amount
of benefits conferred by its partial performance on to Crest.  

 

Murray, 900 S.W.2d at 345. 
Importantly, the Texas Supreme Court did not require any further finding
of unjust enrichment in Murray.  We believe Murray provides the authority for a recovery in quantum meruit in
this case.  

            Roberts
cites our language in Box v. Au Forgeron de la Court-Dieu, Inc., stating:  

Recovery in quantum meruit, when the work has not
been done in a good and workmanlike manner, is limited to the market value of
the work as done less the cost of remedying the defects. 

 

708 S.W.2d 538, 541 (Tex.
App.—Texarkana 1986, writ ref’d n.r.e) (citations omitted).  Box involved
a case in which the jury expressly determined that the work was not done in a
good and workmanlike manner.  Because no
such finding was submitted to the jury in this case, and we do not assume such
a finding given the jury’s belief that Walker performed compensable work, Box is inapplicable. 

VII.    The
Trial Court Did Not Err in Refusing to Award Walker Construction Eighteen   Percent Interest

 

If an owner . . . receives a written payment
request from a contractor for an amount that is allowed to the contractor under
the contract for properly performed work . . .  the owner shall pay the amount to the
contractor . . . not later than the 35th day after the date the owner receives
the request.

 

Tex.
Prop. Code Ann. § 28.002 (Vernon 2000). 
“An unpaid amount required under this chapter begins to accrue interest
on the day after the date on which the payment becomes due . . . An unpaid
amount bears interest at the rate of 1 1/2 percent each month.”  Tex.
Prop. Code Ann. § 28.004 (Vernon 2000).  WAC relies on the Prompt Payment Act to
suggest that eighteen percent prejudgment and post-judgment interest should
have been awarded on its unjust enrichment recovery.  Tex.
Prop. Code Ann. §§ 28.002, 28.004.  

            “As
a prerequisite to presenting a complaint for appellate review, the record must
show that:  (1) the complaint was made to
the trial court by a timely request, objection, or motion.”  Tex.
R. App. P. 33.1.  Judicial economy
requires that a trial court have the opportunity to correct an error before an
appeal proceeds.  In re C.O.S.,
988 S.W.2d 760, 765 (Tex. 1999).  A
motion for new trial, motion to modify or limit judgment, or exception to the
judgment provides the trial court with such an opportunity.  Gerdes v. Kennamer, 155 S.W.3d 523,
532 (Tex. App.—Corpus Christi 2004, pet. denied); William S. Baker, Inc. v. Sims,
589 S.W.2d 492, 493 (Tex. Civ. App.—Dallas 1979, writ ref’d n.r.e.).   

            Here,
the Walker Group did not apprise the trial court of its complaint requesting
eighteen percent interest in the motion for new trial.  It also failed to file a motion to amend or
modify judgment, or otherwise inform the trial court of the complaints.  See
Hyde-Way, Inc. v. Davis, No. 2-08-313-CV, 2009 WL 2462438, at *10 (Tex.
App.—Fort Worth Aug. 13, 2009, no pet.) (mem. op.).  Thus, the Walker Group has waived this point
of error on appeal.  Bushell v. Dean,
803 S.W.2d 711, 712 (Tex. 1991).[17]  

VIII.   Conclusion 

            We
affirm the portion of the trial court’s summary judgment finding interest
charged by WAS usurious under Section 305.003 of the Texas Finance Code.  However, we remand the issue of damages and
attorney’s fees awarded under this section for further proceedings consistent
with our opinion. The trial court’s award of summary judgment with respect to
fraudulent lien claims and associated attorney’s fees is reversed and
remanded.  Claims made under Section
305.004 of the Texas Finance Code, and their associated attorney’s fee awards
are reversed and judgment is rendered that Roberts take nothing on that
claim.  Otherwise, the judgment is
affirmed.

 

                                                

                                                                                    Jack Carter

                                                                                    Justice

 

Date Submitted:          January
13, 2010

Date Decided:             February
26, 2010

 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Gov’t Code Ann.
§ 73.001 (Vernon 2005).  We are unaware
of any conflict between precedent of the Twelfth Court of Appeals and that of
this Court on any relevant issue.  See Tex.
R. App. P. 41.3.





[2]The survey was done by WAS.  There was no separate contract with WAS for
the field survey.





[3]Roberts decided to widen the track from
thirty feet to forty feet.  Although he
recognized that part of the work was due to widening of the track not
contemplated under WAC’s contract and inclusion of a rail and chute, Roberts
testified the total price for the other contractor to complete the track was
$85,345.70.  





[4]Walker
testified the affidavit “should say Walker & Associates Construction.” 

 





[5]WAS
had done survey work before this time. 

 





[6]The
record contains a summary judgment granted in WAS’s favor on its suit on sworn
account.  This summary judgment has no
bearing on this Court’s opinion.  The
trial court set the motion for hearing on January 23, 2008, but WAS asked to
cancel the hearing.  Nevertheless, the
trial court granted WAS’s motion for summary judgment.  The summary judgment order stated that WAS
had appeared through its attorney of record, while Roberts did not appear.  When the miscommunication regarding the
hearing date was pointed out to the trial court, the summary judgment was set
aside.  





[7]The trial court’s attorney’s fees award was
based on Roberts’ attorney’s testimony stating he had segregated the fees for
the usury and fraudulent liens claims to be only $1,312.50.  





[8]A
person who violates this section is liable to the obligor in an amount which is
the greater of $10,000.00 or the actual damages caused by the violation, along
with court costs, reasonable attorney’s fees, and exemplary damages in an
amount determined by the court.  Tex. Civ. Prac. & Rem. Code Ann. § 12.002(b).
  





[9]Walker testified it was his normal practice
to immediately file a lien and that his office prepared the lien.  This evidence suggests Walker may not have
had intent to cause Roberts financial harm. 





[10]For
this issue to reach a jury, Roberts must present some evidence WAS received a usurious interest payment. 





[11]The
Walker Group complains that the notice sent by Roberts of the usury violation
was untimely.  We need not address this
issue since the Walker Group failed to request an abatement. 

 





[12]As
a matter of first impression, our sister court has held that this remedial
statute applies retroactively.  Bair Chase Prop. Co. v. S & K Dev. Co.,
260 S.W.3d 133, 144 (Tex. App.—Austin 2008, pet. denied).  





[13]The trial court in Bair Chase Property Company issued
an order abating the case for sixty days and required the creditor to pay the
debtor $6,000.00 in attorney’s fees.  260
S.W.3d at 137.  Because the creditor paid
the attorney’s fees and sent a corrective action letter to the debtor, the
court determined the violation of the usury statute was cured.  Id.  





[14]The
Walker Group also questions "[w]hether the charge was due to a mistake or
accident is a . . . genuine issue of material fact."  No evidence raising the issue of mistake or
accident is provided in the record, and we need not address this contention.  





[15]The Walker Group cites this Court to First Bank v. Tony’s Tortilla Factory, Inc.,
for the proposition that late fees are not usurious interest.  In First
Bank, the court held that an insufficient fund fee was not interest because
it was a service charge constituting separate and additional consideration,
other than the lending of money, for processing each bad check.  Id. at
287.  In other words, the Bank’s consideration
was not lending money, but rather, advancing funds to cover the bad check.  Id.
at 288.  In its opinion, First Bank cited several cases holding
that attorney’s fees, commitment fees, prepayment penalties, and brokerage fees
were also not considered usurious interest. 
Tex. Commerce Bank v. Goldring,
665 S.W.2d 103, 104 (Tex. 1984); Stedman
v. Georgetown Sav. & Loan Ass’n, 595 S.W.2d 486, 489 (Tex. 1979); Bearden v. Tarrant Sav. Ass'n, 643
S.W.2d 247, 249 (Tex. App.—Fort Worth 1982, writ ref’d n.r.e.); Morris v. Miglicco, 468 S.W.2d 517, 519
(Tex. Civ. App.—Houston [14th Dist.] 1971, writ ref’d n.r.e.).  These
cases holding fees did not constitute interest are distinguishable from this
case because the fees in those cases were “bona fide fees paid to third parties
for servicing late payments” or were contracted for.  Perry
v. Stewart Title Co., 756 F.2d 1197, 1207 (5th Cir. 1985); Goldring, 665 S.W.2d at 104; Stedman, 595 S.W.2d at 489; Bearden, 643 S.W.2d at 248–49; Morris,
468 S.W.2d at 519.    





[16]Also, the above-recited evidence can be used
to conclude it was sufficient for the jury to find Walker’s nonperformance was
not excused by some nonperformance of a material obligation or repudiation by
Roberts.    





[17]Moreover,
the Prompt Payment Act applies only when an obligor under a contract fails to
pay timely in the absence of a good faith dispute.